IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **JAMES DRAPER** and **CARRIE DRAPER**, | No. |
| Plaintiffs, | |
| v. | **COMPLAINT**<br>[42 U.S.C. § 1983] |
| **NEWFIELD TOWNSHIP**; **BRIAN HANNA**, in his official capacity as the Executive Director of the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs; **HICLOUD, LLC**; and **STEVEN MICKLIN**, individually and in his official capacity as Zoning Administrator for Newfield Township, Michigan, | |
| Defendants. | |

Plaintiffs James and Carrie Draper, by and through undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.     This case seeks to protect and vindicate fundamental constitutional rights and to abate a nuisance unlawfully permitted by local and state government officials that has resulted in Plaintiffs' loss of the use and enjoyment of their private property and has caused physical harm to Plaintiffs and their children.  This action is brought under the First and Fourteenth Amendments to the United States Constitution, the Supremacy Clause of the United States Constitution, 42 U.S.C. § 1983, and Michigan law.

2.     Plaintiff James Draper seeks a declaration that the retaliatory actions of certain Defendants in response to his public opposition to the development of marijuana establishments/facilities in his community and neighborhood violated his rights protected by the First and Fourteenth Amendments as set forth in this Complaint.

3.      Plaintiffs seek a declaration that the operation of Defendant HiCloud, LLC is a nuisance as its operation violates state and federal law and causes harm to Plaintiffs and their children; a declaration that by issuing licenses to marijuana establishments/facilities to operate in the State of Michigan, Defendant Hanna, in his official capacity as the Executive Director of the Cannabis Regulatory Agency, has violated federal law as Michigan's licensing scheme (Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., also referred to as "MRTMA"), which permits, *inter alia*, the processing, development, recreational use, and sale of marijuana is preempted by federal law; an injunction abating the nuisance created by Defendant HiCloud, LLC; an injunction enjoining Michigan's licensing scheme (MRTMA), which permits, *inter alia*, the processing, development, recreational use, and sale of marijuana; an injunction enjoining Defendant Newfield Township's zoning laws that permit the operation of marijuana establishments/facilities in the township; an award of nominal damages; and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a).

5.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

6.      Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and Defendant Hanna and the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs are located in this district.

## PARTIES

8.      Plaintiffs James Draper (also referred to as "Jim Draper") and Carrie Draper (also collectively referred to as the "Drapers") are adult citizens of the United States.  The Drapers reside in Defendant Newfield Township (also referred to as "Defendant Newfield"), which is located in Oceana County, Michigan.  Plaintiffs Jim and Carrier Draper also own, through a limited liability company, commercial properties in the Village of Hesperia, Michigan.

9.      Defendant Newfield is a municipal entity organized and existing under the laws of the State of Michigan.  It is a municipal corporation with the right to sue and be sued.  Defendant Newfield enacted and enforces a zoning ordinance that permits the development of marijuana establishments/facilities, including Defendant HiCloud, LLC and Oceana Gardens among others, within its jurisdiction.

10.      Defendant Brian Hanna is the executive director of the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs.  The Cannabis Regulatory Agency (also referred to as "CRA") is responsible for issuing state licenses under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate, *inter alia*, adult use processor establishments in the state of Michigan.  Defendant Hanna is sued in his official capacity only.

11.      Defendant HiCloud, LLC (also referred to as "Defendant HiCloud") is a corporation operating under the laws of the State of Michigan.  Defendant HiCloud holds an

active state license under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate an adult use processor establishment in the state of Michigan.  Defendant HiCloud is operating its marijuana facility in Defendant Newfield pursuant to this state license.

12.    Defendant Steven Micklin is the Zoning Administrator for Defendant Newfield. He is also the Zoning Administrator for the Village of Hesperia, Michigan.  Defendant Micklin is responsible for issuing ordinance violation citations in Defendant Newfield and in the Village of Hesperia.  Defendant Micklin is sued individually and in his official capacity as the Zoning Administrator for Defendant Newfield.

## STATEMENT OF FACTS

13.    The Drapers' private residence is located on 184th Avenue in Hesperia, Michigan, which is located in Defendant Newfield.  The Drapers and their five children live at this private residence.

14.    Less than 300 yards (approximately 728 feet) from the Drapers' home is a marijuana establishment/facility operating as Defendant HiCloud.  Defendant HiCloud is physically located at 7655 E M-20 in Hesperia, Michigan.  This marijuana establishment/facility began operating at this location in or about 2021.

15.    According to the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs, Defendant HiCloud holds an active state license under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate an adult use processor establishment in the state of Michigan.  Defendant HiCloud is operating in Defendant Newfield pursuant to this state license.

16.     According to public records, Defendant HiCloud is currently subject to multiple formal complaints filed by the CRA regarding alleged violations of the MRTMA and/or related administrative rules.

17.     Should the CRA shut down Defendant HiCloud for its ongoing violations, a new marijuana facility will certainly take its place in light of the favorable actions Defendant Newfield and its officials are willing to engage in to protect the marijuana industry in the township and the fact that other such companies (Oceana Gardens) also operate marijuana establishments/facilities within the township and in the surrounding areas.  In fact, Oceana Gardens was granted permits to open facilities in the neighboring Village of Hesperia, but has yet to act on the permits.

18.     Marijuana is a Schedule I controlled substance under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (also referred to as "CSA").

19.     Federal law regulating the processing, distribution, and use of marijuana is comprehensive.  In fact, the Firearms Transaction Record (ATF Form 4473) used by the Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice, asks the following question when an individual seeks to purchase a firearm: "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?  **Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside**."  (ATF Form 4473) (emphasis added).

20.     The express purpose of the MRTMA is stated, in relevant part, as follows: "The purpose of [the MRTMA] is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the

commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved.  The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older . . . .  To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section."  Mich. Comp. Laws § 333.27952.

21.     The MRTMA legalizes the possession, use, and consumption of marijuana, *see* Mich. Comp. Laws § 333.27955, which directly conflicts with federal law (the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*).

22.     The MRTMA permits the operation of marijuana establishments/facilities, such as Defendant HiCloud, which directly conflicts with federal law (the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*).

23.     Defendant HiCloud possess a state license under the MRTMA to operate an adult-use marijuana processor establishment in the state of Michigan, and the operation of such establishments violates federal law (the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*).

24.     In 2022, Plaintiff Jim Draper started the process for a ballot initiative/proposal in accordance with the provisions set forth in the MRTMA (Mich. Comp. Laws § 333.27956) to prohibit the development of marijuana establishments/facilities in Newfield Township.  This process included obtaining approval for the ballot language, obtaining blank petitions from the county clerk, circulating the petitions, and submitting the signed petitions to the county clerk for review.  When the Oceana County Clerk approved the initiative/proposal for inclusion on the ballot, Joan David (the Newfield Township Supervisor) and Nancy Conley (the Newfield Township Clerk), as individuals, sued Oceana County to get the initiative/proposal removed from the ballot.  The presiding judge ruled in their favor, concluding that the petition form used

was an outdated version and that the petitions should have been turned in to the Newfield Township Clerk (Nancy Conley) instead of the Oceana County Clerk.  The judge also directed the Oceana County Clerk to obtain the updated petition forms.

25.    At a subsequent Newfield Township board meeting, the board voted (3 to 2) to approve the payment of the attorney's fees incurred by Joan David and Nancy Conley for filing the lawsuit challenging the ballot initiative/proposal.

26.    Plaintiff Jim Draper subsequently received the updated petition forms from the Oceana County Clerk, circulated them yet again, gathered the required number of signatures, and then attempted to submit them to the Newfield Township Clerk, Nancy Conley.  But Mrs. Conley refused to accept them, forcing Plaintiff Jim Draper to file a lawsuit against her to get the petitions accepted.  The judge in this proceeding ordered Mrs. Conley to accept the petitions, and the initiative/proposal was placed on the ballot.

27.    Once the initiative/proposal was placed on the ballot, Defendant Newfield officials began a campaign of scaring residents into voting against the initiative/proposal by stating that if the initiative/proposal passed, the township would be sued by the marijuana companies and it (the township) would not be able to afford the litigation.  As a result, according to Defendant Newfield officials, the township residents' property taxes would increase drastically and some may even lose their homes due to the increase in taxes caused by the litigation.

28.    In an official newsletter published by Defendant Newfield, it stated the following regarding the ballot initiative/proposal: "Proposal to repeal Ordinance authorizing and permitting commercial Marihuana facilities.  (This proposal was not put on the ballot by the Newfield

Township Board) (If it passes all marijuana facilities would be shut down and the Township could face possible sever consequences)."

29.    Defendant Micklin also posted his opposition to this ballot initiative/proposal on social media, stating, *inter alia*, "If the Township is sued, it would be VERY EXPENSIVE!  The Township would have to cover the costs of it's (sic) legal fees and quite possibly the costs that the facilities incur!  And that's just the start.  There would be the cost of lost products and investments these folks made (about $12M)! . . .  This terrible outcome is not guaranteed.  But do you want to take a chance on your property taxes possibly doubling?  I sure don't!!"

30.    In another social media post, Defendant Micklin stated, in relevant part, "Can you imagine what our tax burden would be if the facilities were shut down and the township was liable for a multi-million dollar (sic) settlement?!  We could be paying well over $1,000/year in additional taxes!  And it would be court ordered without a township vote!  So I wanted to clear up that us taxpayers could be liable for a large settlement if the ballot initiative passes!  I would respectfully suggest voting NO on the proposal!"

31.    Jay Peasley, a former member of the Newfield Township's planning commission and a strong supporter of marijuana establishments/facilities, addressed the township's board during a public meeting and submitted a letter urging the voters to reject the ballot initiative/proposal, stating, in relevant part, that if the ballot initiative/proposal passes, the township's residents would be responsible for the cost of the inevitable litigation through a dramatic increase in property taxes, which "will bankrupt many township residents.  One would be forced to sell their home and move else where (sic), if one could sell it.  No one would want to buy a property that has a tax lien of almost $100,000."

32.     The ballot initiative/proposal was ultimately defeated in the November 2022 election.

33.     In 2023, Defendant HiCloud submitted an application for a special use permit, seeking to expand its existing commercial marijuana operation onto a neighboring property in Defendant Newfield that is zoned for residential use.  This request violated Michigan state law as well as Defendant Newfield's zoning ordinance as commercial marijuana operations are not permitted on property zoned for residential use.  Moreover, this request violated federal law (the Controlled Substances Act, 21 U.S.C. § 801 *et seq*.) as the MRTMA and associated laws authorizing and legalizing, *inter alia*, the processing, development, sale, and use of marijuana in Michigan for recreational purposes are preempted by federal law.

34.     In fact, prior to this request to expand its existing facilities, Defendants Newfield and Micklin permitted Defendant HiCloud to operate approximately half of its marijuana facility on property that was zoned for residential use.  Thus, prior to its request to expand, Defendant HiCloud was operating its marijuana facility in violation of local and state law, as well as federal law.

35.     Plaintiff Jim Draper has publicly expressed opposition during township board meetings to the operation of marijuana establishments/facilities in Defendant Newfield and in the local communities, including publicly opposing the operation of Defendant HiCloud, which is permitted to operate on property zoned for residential use by Defendants Newfield and Micklin.

36.     Plaintiff Jim Draper also publicly expressed opposition to Defendant HiCloud's special use request, sending Defendant Newfield a letter from a lawyer that set forth the law demonstrating that the requested expansion was illegal.  The letter was dated March 20, 2023. Plaintiff Jim Draper also submitted a formal "Public Safety Ordinance Complaint" on or about

June 9, 2023, related to this expansion request.  Defendant Newfield rejected Plaintiff Jim Draper's opposition to this development and approved the special land use permit, allowing the unlawful expansion to occur.

37.    In 2023, Plaintiff Jim Draper filed a *pro se* lawsuit in Circuit Court against Defendant Newfield in an effort to challenge the decision granting the special land use permit. The lawsuit was dismissed at the pleading stage because it was procedurally defective.  No nuisance claims were advanced in this state court proceeding nor were any substantive issues decided.

38.    The Drapers live on a rural five-acre parcel, and they enjoy spending time outside when the weather is nice.  The nearby marijuana establishment/facility, Defendant HiCloud, produces a strong, heavy smell caused by, *inter alia*, the airborne terpenes and cannabinoids. The overwhelming smell of these emissions typically starts in June and continues to build in intensity thru the month of October.  This is the best time of year to be outside; however, the Drapers have to leave their home to enjoy the outdoors due to the emissions coming from the facility.  When they are home, the Drapers cannot open their windows, but instead have to keep the house sealed up during the summer and early Fall as a result of the emissions.

39.    As Christians, the Drapers do their best to raise their children with a Biblical worldview.  Based on their sincerely held religious beliefs, the Drapers are strongly opposed to recreational drug use.  The Drapers are now forced to raise their children in a home that smells of marijuana.  Their clothes smell like marijuana.  When they go to the grocery store and return to their car in the parking lot, their car smells like marijuana.  People who do not know the Drapers would reasonably conclude that they are drug users.  And it is difficult to have people visit their home because it smells like a drug house during the summer and early Fall.

40.     Several of the Draper children get headaches from the smell of the emissions coming from Defendant HiCloud's marijuana facility.  One child's allergies flare up as a result. For their youngest child, the headaches often become migraines.  Plaintiff Carrie Draper also suffers headaches as well as anxiety from the emissions.  Her doctor advised her to leave the home for the day when these symptoms occur, which she has done on many occasions and will continue to do.

41.     Plaintiff Jim Draper has been a vocal opponent of Defendant HiCloud's marijuana operation and to the operation of marijuana establishments/facilities in general, often expressing his opposition to Defendant Newfield officials, including Defendant Micklin, during township board meetings.  As a result, Defendant Newfield officials, including Defendant Micklin, have retaliated against him for his public opposition by issuing and threatening to issue ordinance violations.  These retaliatory tactics began in 2021, and the threats continue to this day.

42.     Defendant Newfield and its officials have developed and enforce an official policy of intimidation and retaliation against Plaintiff Jim Draper for his public opposition to the operation of marijuana establishments/facilities in the township.

43.     Defendant Newfield has retaliated and continues to retaliate against Plaintiff Jim Draper pursuant to an official municipal policy of intimidation and retaliation.  In particular, Defendant Newfield, through its elected officials and employees, formed a premeditated plan to intimidate Plaintiff Jim Draper in retaliation (a) for his public criticism of Defendant Newfield officials because of the favoritism they give to the marijuana industry operating within the township, (b) for Plaintiff Jim Draper's efforts to prohibit marijuana establishments/facilities in the township via a ballot initiative/proposal, and (c) for Plaintiff Draper's filing of a lawsuit challenging Defendant Newfield's unlawful decision to grant Defendant HiCloud a special use

permit to expand its illicit marijuana operation.  Defendant Newfield, through the same high officers, executed that plan by selectively enforcing the law and directing the issuance of ordinance violations against Plaintiff Jim Draper.

44.    A former township official was present in the township office during a conversation between Dennis David, the Newfield Township Sexton and husband of the Newfield Township Supervisor, and Defendant Micklin.  During this conversation, the former official heard Mr. David and Defendant Micklin discussing the potential violations that Plaintiff Jim Draper kept raising against the marijuana establishments/facilities, particularly during the township board meetings.  The former official heard Defendant Micklin say, "if he [Plaintiff Jim Draper] wants to play violations, I can find violations on him, too," or words to that effect.  At that point, Mr. David said, "be careful with that.  You can't make it look like retaliation," or words to that effect.

45.    Shortly after that conversation, Plaintiff Jim Draper received his first violation letter from Defendant Newfield.  The violation notice was related to a small windmill that Plaintiff Jim Draper has on his property.  Evidence shows that the complaint was initiated and signed by another Defendant Newfield employee/official—Jay Peasley, a Planning Commission member at the time.  Mr. Peasley was one of the driving forces behind the development and operation of marijuana establishments/facilities in the township.   By signing this formal complaint, Mr. Peasley was assisting Defendant Micklin with enforcing the policy of intimidation and retaliation, and he was helping to protect Defendant HiCloud in the process.

46.    Plaintiff Jim Draper responded to the notice of violation by asserting his innocence, noting that the windmill at issue was not in violation of any township ordinance.  As of this date, Defendant Newfield has not pursued any further action related to this violation.

However, Defendant Newfield officials still hold this alleged violation over Plaintiff Jim Draper's head, as discussed below.

47.     Following Plaintiff Jim Draper's opposition to Defendant HiCloud's request in 2023 for a special land use permit (including Plaintiff's submission of the attorney letter setting forth the illegality of this special land use request and his filing of the *pro se* lawsuit), Defendant Newfield threatened yet another ordinance violation.

48.     In a letter to Plaintiff Jim Draper dated June 16, 2023, Defendant Newfield (through Defendant Micklin) falsely claimed that Plaintiff Jim Draper was operating a commercial business within a residential zoning district (*i.e.*, that he was operating a business from his private residence).  During the exchange of written communications between Plaintiff Draper and Defendant Micklin regarding this latest violation, Defendant Micklin vowed to resurrect the citation issued in 2021 related to Plaintiff Draper's windmill.  Throughout, Plaintiff Draper has asserted his innocence, and he has demanded that the matters proceed to a judge for final determination.  Defendant Newfield has not followed up on any of these alleged violations.

49.     During a Newfield Township board meeting on June 20, 2023, Defendant Micklin is seen on video pointing his finger at Plaintiff Jim Draper and stating, "If I want to retaliate, I have lots of other ways," or words to that effect.

50.     As noted, Plaintiff Draper often speaks at public meetings in opposition to the development of marijuana establishments/facilities in the township and surrounding areas. Frequently, there would be many angry residents in the same situation as Plaintiff Draper, agreeing with him at the meetings.  These residents would often gather at the Drapers' home after the meetings.  At times, a black SUV would drive by the home slowly, turn around at the end of the Drapers' property, and then drive slowly in the opposite direction.  This happened

many times following the township meetings, and it was clearly intended as an act of intimidation.  The Newfield Township supervisor's husband would often do the same (drive by slowly, turn around, and then drive by slowly in the opposite direction).  In response, Plaintiff Jim Draper constructed a barrier by placing round hay bales on the edge of his property along the road and by stacking firewood in front of the entire length of his house because he and others were afraid there could be a shooting.  The intimidation was effective.

51.     During some Newfield Township board meetings, the township hall would fill up with people who support marijuana establishments/facilities.  During the meetings, these people would jeer and harass residents who opposed the facilities.  While such harassment is contrary to the rules of the public meetings, Defendant Newfield officials would allow it.  It is believed that most of these supporters were brought in from out of state as there would be many out of state plates in the parking lot when this happened.

52.     Plaintiff Jim Draper is a staunch supporter of the Second Amendment.  Before moving to Michigan twenty years ago, the Drapers lived in Montana.  Plaintiff Jim Draper regularly open carried a handgun while he lived in Montana, and he continued to do so in Michigan.  Carrying a handgun was never an issue; he carried in Newfield Township for years without a problem (he has a valid CPL).  When Plaintiff Jim Draper started attending Newfield Township meetings, he would carry a holstered handgun.  False rumors started to spread that he was brandishing his firearm and intimidating people in the meetings.  As a result, he quit carrying at the public meetings.  At one point (after he had stopped carrying a firearm to the meetings), the Newfield Township supervisor, Joan David, went to the County Sherriff with audio of Plaintiff Jim Draper speaking at a meeting.  The supervisor told the Sherriff that while Plaintiff Draper was making his public statement, he was patting a gun on his side in a

threatening manner.  The Sherriff told Plaintiff Draper about this conversation, and he told Plaintiff Draper that he knew him well enough to know that it wasn't true.  The meeting was video recorded, so Plaintiff Jim Draper watched the video of the meeting.  The video clearly shows that Plaintiff Jim Draper did not have a firearm on his person and that his hands remained on the paper from which he was reading his statement the entire time.

53.    Several government officials who are supportive of the marijuana industry in Defendant Newfield (Joan David, Newfield Township Supervisor; Nancy Conley, Newfield Township Clerk; Mary Hopkins, Newfield Township Treasurer; Rick Roberson, Newfield Township Trustee; and Wayne Ferris, Newfield Township Trustee) have received campaign support/funding from an organization called Make Newfield Great Again.  The business address for Make Newfield Great Again is the same as Oceana Gardens, an organization that operates two marijuana establishments/facilities in Defendant Newfield.  Consequently, there is a financial benefit/reward for Defendant Newfield officials to support the marijuana industry and to retaliate against those individuals, such as Plaintiff Jim Draper, who oppose it.

54.    Plaintiffs Jim and Carrie Draper are co-owners of Hesperia Antiques & Curio, LLC, which owns commercial properties in the Village of Hesperia, Michigan (also referred to as the "Village").

55.    In March 2024, the Village, through its attorneys and at the behest of Mike Farber, the President of the Village, and Defendant Micklin, the Zoning Administrator for the Village, sent a notice to Plaintiff Jim Draper that the commercial properties owned by Hesperia Antiques & Curio, LLC violated certain provisions of the Village's ordinances.  The Village didn't cite the actual owner of the commercial property, which is Hesperia Antiques & Curio, LLC, nor did it name Plaintiff Carrie Draper, a co-owner of the company.  The Village only cited

Plaintiff Jim Draper as he is the person who publicly opposes the operation of marijuana establishments/facilities in his community and because this is part of the plan and scheme to retaliate and selectively enforce the law against him for his public opposition to marijuana establishments/facilities.

56.     Following receipt of this notice, Plaintiff Jim Draper spoke with the Village President, Mike Farber, regarding the actions Plaintiff intended to take to remedy the alleged violations (unsecured windows and doors).  The Village agreed to hold off any enforcement action to allow the remediation, which included securing the windows and doors.

57.     The Village President, Mr. Farber, is close friends with the Newfield Township Clerk, Nancy Conley, the Newfield Township Supervisor, Joan David, and Defendant Micklin. Mr. Farber was aware of the situation between Plaintiff Jim Draper and Defendant Newfield regarding Plaintiff's public opposition to marijuana establishments/facilities.  Accordingly, Mr. Farber willingly cooperated with the plan to retaliate against Plaintiff Jim Draper for this opposition.  Indeed, in or about the end of 2022, the Village hired Defendant Micklin to be its Zoning Administrator—making him the person responsible for enforcing ordinance violations within the Village.

58.     Plaintiff Draper proceeded to take the remedial actions required by the Village by boarding up and securing the windows and doors of the commercial properties.

59.     While the Village and Defendant Micklin are focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that the home of the Village President, Mr. Farber, contains similar, and in some cases worse, violations of the Village's ordinances. Below are true and accurate photographs of Mr. Farber's residence, demonstrating numerous

unsecured doors and windows and other ordinance issues that the Village and Defendant Micklin

ignore while they pursue ordinance violations against Plaintiff Jim Draper:

 







60.    As shown in the photographs above, Mr. Farber's property has broken or unsecured windows, holes in doors, a junk vehicle with no license plate stored on the property, missing siding, and other issues that violate the Village ordinances.  At a minimum, this property is in a "state of disrepair which . . . present[s] an unsightly appearance."  However, Defendant Micklin, the Zoning Administrator, is not pursuing ordinance violations against Mr. Farber for his property.

61.    While the Village and Defendant Micklin are focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that a commercial building leased by Oceana Gardens (a marijuana company) located in the Village fails to comply with the Village's ordinances.  Below are true and accurate photographs of this property, which is unsightly and in a state of disrepair:

 



62.    While the Village and Defendant Micklin are focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that a commercial building that is attached to the Village Hall (this building was slated to be a marijuana facility, but the owners of the building have since put it up for sale) fails to comply with the Village's ordinances.  Below are true and accurate photographs of this property, which is unsightly and in a state of disrepair:



63.    There are many other properties in the Village that similarly violate the Village's ordinances that Defendant Micklin, as the Zoning Administrator, ignores while selectively enforcing the ordinances against Plaintiff Jim Draper.  Indeed, there are numerous properties in the Village that are in a "state of disrepair" and which "present an unsightly appearance," as well as other ordinance violations.  However, Defendant Micklin is not pursuing ordinance violations against these property owners.

64.    Despite Plaintiff Jim Draper's good faith efforts (and "substantial progress") to remedy the alleged ordinance violations identified by Mr. Farber, the Village proceeded to issue citations to Plaintiff for having unsecured doors and windows.  Three citations were issued: one on August 26, 2024 (Ticket No. 2210), one on September 12, 2024 (Ticket No. 2212), and one on September 23, 2024 (Ticket No. 2214) for maintaining a vacant or unused building (the

building is used for storage; therefore, it is not a vacant building nor is it unused) with unsecured doors and windows.

       65.    Following receipt of the citations, Plaintiff Jim Draper wrote a letter to Mr. Farber dated September 26, 2024, which set forth additional facts demonstrating the harassing nature of these citations.  The letter stated in relevant part as follows:

> Mike Farber,
>
> Regarding Civil Infraction #2210, it instructed me to appear at the 79th District Court, but did not state what day I must appear by.  I did go to the court and I was told that there was nothing filed there regarding myself or the Civil Infraction.
>
> Today, I received 2 more Civil Infractions in the mail (#2212 and #2214).  Both of these were for the same "zoning violation" as the #2210 Civil Infraction. #2212 instructed me to appear at the 79th District Court by September 26th (today).  #2214 instructed me to appear at the 79th District Court by October 8th. Instead of wasting time and fuel, I called the Court today. I was told by the Court there is no point in coming in because they have no record of the Civil Infractions.
>
> I respectfully ask that you stop the harassment and instead figure out what is holding up the process of the parcel division that was discussed with the Village Council.  After months of leaving messages, I was finally able to speak with Barbie Eaton.  I had to call [her] from a different phone number.  She told me that Steve Micklin was supposed to get with you and approve the split.  She stated that Steve Micklin indicated that her part was completed and it was now up to Steve and yourself to finish.  At the last Village Council Meeting, you stated that everything was up to Barbie Eaton and you and Steve Micklin have nothing to do with it. There appears to be a conspiracy to hold up the process.  When the truth comes out about what is really going on here, it will make quite a story.
>
> I am sending this via certified mail to you and Brennen Gorman, Village Attorney.
>
> Please start acting like a professional and stop throwing your weight around with bully tactics for your friends on the Newfield payroll.

       66.    Plaintiff Jim Draper was trying to split his commercial properties in the Village so he could sell the building that is allegedly not in compliance with the Village ordinances. However, Plaintiff's efforts were constantly frustrated by Village officials.

67.     Plaintiff Jim Draper followed up his September 26 letter with another letter to Mr.

Farber and Mr. Gorman dated October 2, 2024.  This letter read, in relevant part, as follows:

Mike Farber, Village of Hesperia, Brennen Gorman,

As you know, I have received 3 civil infractions (#2210, #2212 and #2214) on my
property at 147 N. Division.  All of the civil infractions were for "unsecured doors
and windows."  In my previous correspondence, I stated that I would secure the
windows (as there were no unsecured doors) while the Village and Assessor get
their story straight on splitting the lot.

I went above and beyond the requirements and sheeted the entire west wall.  I
have included a picture.  I intend on getting paint on it soon, but that is not a
requirement for compliance.  I would like, in writing, a statement from the Village
that these civil infractions are closed and can be disregarded.

68.     Rather than close the matter, Mr. Farber, the Village, and Defendant Micklin

doubled-down by issuing three new citations.  These citations, which are pending, are for the

following alleged violations: Ticket No. 2217: "Violation of 91.06 Vacant building with

unsecured openings, hazardous roof and missing siding"; Ticket No. 2218: "Violation of 91.06 –

Unsecured vacant building with torn/damaged roof, openings in walls, unsecured doors,

windows"; and Ticket No. 2220: "Violation of 91.06 – Unsecured vacant building with missing

siding unsecured windows doors poor roof."  As noted, the building is not "vacant" (nor

"unused") as it is used for storage.

69.     When Plaintiff Jim Draper contacted Village officials about these new citations,

he was told that his remediation was not good enough and that these properties had to be what

the Village attorney described as "rodent proof"—meaning that not even a mouse should be able

to enter the properties, which is a standard that is practically impossible to comply with as all

buildings have vents and other required openings that could permit a rodent to enter.  Defendant

Micklin, the Village Zoning Administrator, is applying this standard against Plaintiff Jim Draper,

but he does not apply it against other properties in the Village, as demonstrated in this Complaint.

70.     And while these latest citations (Ticket Nos. 2217, 2218, and 2220) were signed by "Mike Farber," the handwriting was that of Defendant Micklin, and they were all mailed from a Village of Shelby post office.  Defendant Micklin lives in the Village of Shelby and Mr. Farber does not.  In other words, the citations were the work of Defendant Micklin, and they were all part of his efforts and those of Defendant Newfield to retaliate against Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities in the township.

71.     Realizing that these latest citations (Ticket Nos. 2217, 2218, and 2220) lacked merit, particularly in light of the remedial actions ("substantial progress") taken by Plaintiff Jim Draper to comply with the law, the Village attempted to strongarm Plaintiff Jim Draper into admitting that he violated the ordinance (the Village wanted him to execute a "consent judgment" that Village officials would hold over his head) in exchange for an agreement by the Village not to prosecute the matter further.  The proposed "consent judgment" also included an agreement by Plaintiff Jim Draper to paint the plywood that he installed on the side of the building (which he already told the Village he planned to do) once the weather permitted and to provide a covering over some Tyvek he installed on the building.  In good conscience, Plaintiff Jim Draper could not admit to violating the ordinance as he always attempted to comply with the Village's demands and, at a minimum, he made "substantial progress" toward that end even while the Village kept "moving the goalposts" as to the specific alleged violations.

72.     Prior to being presented with the "consent judgment" proposal, Plaintiff Jim Draper had a conversation with Mr. Farber after the Village Council meeting on December 9, 2024.  During this conversation, Mr. Farber agreed that the repairs Plaintiff Jim Draper made to

the building were sufficient to bring the building into compliance with the Village ordinance. Accordingly, there is no basis for the Village and Defendant Micklin to continue to pursue the ordinance violations against Plaintiff Jim Draper.

73.     As set forth in this Complaint, Defendant Micklin has conspired with other government officials and former government officials, including but not limited to, Joan David, Nancy Conley, Jay Peasley, and Mike Farber, to retaliate against Plaintiff Jim Draper and to selectively enforce local ordinances against him for his public opposition to marijuana establishments/facilities.

74.     As set forth in this Complaint, Defendants Newfield and Micklin selectively enforce the law to favor Defendant HiCloud and those who promote or support the marijuana industry, and Defendants Newfield and Micklin selectively enforce the law against those who oppose the marijuana industry, specifically including Plaintiff Jim Draper.

75.     This retaliation and selective enforcement of the law against Plaintiff Jim Draper for publicly opposing the development of marijuana establishments/facilities in Defendant Newfield, and in particular the marijuana establishment/facility near his home (Defendant HiCloud), has had a chilling effect on his First Amendment freedoms as these threats hang over his head each time he considers challenging anything that has to do with the development or operation of a marijuana establishment/facility in the township.

**FIRST CLAIM FOR RELIEF**
**(First Amendment—Retaliation)**

76.     Plaintiffs hereby incorporate all stated paragraphs.

77.     By reason of the retaliatory actions, specifically including the retaliatory policy, which was created, adopted, and enforced under the color of state law and authority, Defendants Newfield and Micklin have deprived Plaintiff Jim Draper of his fundamental rights protected by

- 23 -

the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

78.    Plaintiff Jim Draper's public opposition to marijuana establishments/facilities, which includes, *inter alia*, making public comments at Defendant Newfield board meetings, organizing a ballot initiative/proposal to prohibit such establishments/facilities in the township, filing formal complaints with Defendant Newfield, and filing a lawsuit against Defendant Newfield, is protected by the First Amendment.  The U.S. Supreme Court has recognized the right to petition as one of the most precious liberties safeguarded by the Bill of Rights.

79.    The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech and other activities protected by the First Amendment.

80.    Plaintiff Jim Draper's right to be free from government retaliation for exercising his First Amendment rights is clearly established.  U.S. Supreme Court decisions rendered long before the actions at issue in this case recognize that government officials may not retaliate against an individual for the exercise of protected First Amendment freedoms.

81.    The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out.

82.    As set forth in this Complaint, Plaintiff Jim Draper engaged in protected First Amendment activity, and this protected activity was a "substantial" or "motivating" factor in Defendant Newfield's and Defendant Micklin's decisions to take action against him.

83.    Defendants Newfield and Micklin would not have taken the same adverse action as set forth in this Complaint in the absence of Defendant Jim Draper's protected First Amendment activity.

84.     As set forth in this Complaint, there is no probable cause nor other justification for the ordinance violation notices/citations issued or threatened to be issued against Plaintiff Jim Draper by Defendants Newfield and Micklin, and Defendant Micklin is selectively enforcing the township and Village ordinances to retaliate against Plaintiff Jim Draper for his First Amendment activity.

85.     The violation notices/citations as set forth in the Complaint were issued pursuant to an official retaliatory policy devised by Defendant Newfield officials, including Defendant Micklin, against Plaintiff Jim Draper for opposing marijuana establishments/facilities in the township.

86.     Defendant Newfield's retaliatory policy and Defendant Micklin's retaliatory actions as set forth in this Complaint are viewpoint based in violation of the First Amendment.

87.     Defendant Newfield's retaliatory policy was a moving force behind the violation of Plaintiff Jim Draper's rights protected by the First Amendment as set forth in this Complaint.

88.     As a direct and proximate result of Defendant Newfield's and Defendant Micklin's violation of the First Amendment, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory relief and nominal damages.

## SECOND CLAIM FOR RELIEF
### (Fourteenth Amendment—Equal Protection)

89.     Plaintiffs hereby incorporate all stated paragraphs.

90.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants Newfield and Micklin have deprived Plaintiff Jim Draper of the equal protection of the law guaranteed under

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

91.     Defendant Newfield's and Defendant Micklin's enforcement of the retaliatory policy as set forth in this Complaint violates the equal protection guarantee of the Fourteenth Amendment.

92.     Defendant Newfield's and Defendant Micklin's selective enforcement of the zoning laws and ordinances against Plaintiff Jim Draper violates the equal protection guarantee of the Fourteenth Amendment.

93.     By punishing Plaintiff Jim Draper for accessing a public forum for speech (township board meetings) based on the content and viewpoint of his speech, Defendants Newfield and Micklin have deprived Plaintiff of the equal protection of the law.

94.     Defendant Newfield's retaliatory policy was a moving force behind the violation of Plaintiff Jim Draper's rights protected by the Fourteenth Amendment as set forth in this Complaint.

95.     As a direct and proximate result of Defendant Newfield's and Defendant Micklin's violation of the Equal Protection Clause, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory relief and nominal damages.

### THIRD CLAIM FOR RELIEF
### (Supremacy Clause—Federal Preemption)

96.     Plaintiffs hereby incorporate all stated paragraphs.

97.     The federal preemption doctrine owes its existence to Article VI of the U.S. Constitution, which makes the Constitution, and federal law enacted pursuant to it, the "supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

98.    The Supremacy Clause precludes courts from giving effect to state laws that conflict with federal laws.

99.    Defendant Hanna in his official capacity lacks authority to enforce the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq.*, specifically including, but not limited to, issuing licenses that permit the processing and/or distribution of marijuana because the United States Congress has acted to occupy the entire field and to preempt altogether any state regulation purporting to allow and/or legalize the processing, distribution, and/or use of marijuana, a Schedule I controlled substance under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. (CSA).

100.    The Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq.*, conflicts with and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law, including the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. (CSA).

101.    The CSA designates marijuana as contraband and thus illicit for any purpose.

102.    The CSA is a comprehensive regulatory regime specifically designed to regulate the use of controlled substances, including marijuana.

103.    There is clear conflict between Michigan state law and local zoning ordinances and regulations that permit the establishment of marijuana production and distribution facilities in Michigan and federal law that makes such practices illegal.  Under the Supremacy Clause, federal law prevails and renders the state and local laws without effect.  Accordingly, the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq.*, and state and local laws permitting the operation of marijuana establishments/facilities in Michigan are preempted and without effect.

104.    Because the MRTMA is preempted by federal law, Plaintiffs are entitled to declaratory and injunctive relief prohibiting its enforcement.

105.    Because Defendant Newfield's zoning laws that permit the operation of marijuana establishments/facilities, as set forth in this Complaint, are preempted by federal law, Plaintiffs are entitled to declaratory and injunctive relief prohibiting their enforcement and nominal damages.

## FOURTH CLAIM FOR RELIEF
### (Michigan Law—Nuisance)

106.    Plaintiffs hereby incorporate all stated paragraphs.

107.    Michigan courts recognize essentially two categories of nuisance: private nuisance and public nuisance.

108.    A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land, whereas a public nuisance is an unreasonable interference with a common right enjoyed by the general public.

109.    Defendant HiCloud's marijuana operation as set forth in this Complaint is a private nuisance that invades Plaintiffs' private use and enjoyment of their land.

110.    A nuisance in fact (also referred to as a nuisance *per se*) is a subcategory of public nuisance.

111.    A public nuisance includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights.  The activity must be harmful to the public health, or create an interference in the use of a way of travel, or affect public morals, or prevent the public from the peaceful use of their land and the public streets.

112.    A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public.

113.    A nuisance that affects public health is typified by the release of harmful substances.

114.    Under the Michigan Zoning Enabling Act (MZEA), Mich. Comp. Laws § 125.3407, the use of land or a building in violation of a zoning ordinance is a nuisance *per se.*

115.    Defendant Newfield permits as matter of its local zoning laws and ordinances the operation of marijuana establishments/facilities in the township, including Defendant HiCloud, and these facilities are nuisances *per se* as they are proscribed by federal law.

116.    Private individuals who can show damages of a special character distinct and different from the injury suffered by the public generally may bring an action to abate a public nuisance arising from the violation of a zoning ordinance.

117.    Defendant HiCloud's operation violates Defendant Newfield's zoning ordinance by operating, in part, on land that is zoned residential.  This operation also violates Michigan law, which similarly prohibits the operation of marijuana establishments/facilities on property zoned for residential use, and it violates federal law as state and local laws, including zoning laws and ordinances, that permit marijuana establishments/facilities to operate in Michigan are preempted by federal.

118.    Defendant HiCloud's activities directly and adversely affected Plaintiffs' recreational, aesthetic, and economic interests by harming Plaintiffs' use and enjoyment of their private home and property and by causing physical harm and injury to Plaintiff Carrie Draper and to the Drapers' children.

119.    Plaintiffs are currently suffering special damages by the odors and release of substances into the air by Defendant HiCloud that are causing physical harm and that are disrupting Plaintiffs' use and enjoyment of their private property.

120.    Plaintiffs' status as a nearby (less than 300 yards away) property owner lends support to the finding that they can demonstrate special damages different from injury suffered by others in the community generally.

121.    The operation of Defendant HiCloud violates state and local zoning laws and ordinances, in addition to federal law.

122.    Despite the fact that state and local zoning laws and ordinances prohibit the operation of marijuana establishments/facilities on property zoned for residential use, Defendant Newfield permitted Defendant HiCloud to develop its original marijuana establishment/facility on such property (approximately half of the property was zoned for residential use), in violation of local, state, and federal law.  Then, in 2023, Defendant Newfield granted Defendant HiCloud a special land use permit to expand its facilities onto property zoned for residential use, in violation of local, state, and federal law.  Accordingly, the operation of Defendant HiCloud is a nuisance *per se*.

123.    The MRTMA provides that "the property where the proposed marihuana establishment is to be located" may "not [be] within an area zoned for residential use."  Mich. Comp. Laws § 333.27959.  Defendant Newfield's zoning ordinance further provides that marijuana establishments/facilities are only permitted in certain non-residential districts.  *See* Def. Newfield Zoning Ordinance, Art. 22.

124.    Defendant Newfield granted Defendant HiCloud's special land use application, permitting it to expand its marijuana establishment/facility onto property that is zoned for

residential use in violation of state and local laws related to the zoning of such facilities and in violation of federal law.

125.    Because the operation of Defendant HiCloud's marijuana facility is a nuisance, Plaintiffs are entitled to an injunction abating the nuisance.

**FIFTH CLAIM FOR RELIEF**
**(Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983)**

126.    Plaintiffs hereby incorporate all stated paragraphs.

127.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendant Micklin acted jointly and conspired with other government officials, including but not limited to, Joan David, Nancy Conley, Jay Peasley, and Mike Farber, to violate Plaintiff Jim Draper's rights protected by the First and Fourteenth Amendments as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

128.    Defendant Micklin and others conspired to punish Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities, as set forth in this Complaint.

129.    Defendant Micklin and others conspired to selectively enforce Defendant Newfield's and the Village's ordinances against Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities, as set forth in this Complaint.

130.    As a direct and proximate result of this conspiracy to violate Plaintiff Jim Draper's rights protected by the First and Fourteenth Amendments, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory relief and nominal damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)      to declare that Defendants Newfield and Micklin violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B)      to declare that the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq*., violates the Supremacy Clause and is thus preempted by federal law;

C)      to declare that local and state zoning laws and ordinances that permit the operation of marijuana establishments/facilities in Michigan, as set forth in this Complaint, violate the Supremacy Clause and are thus preempted by federal law;

D)      to issue an injunction enjoining Defendant Hanna, in his official capacity, for issuing or reissuing any licenses pursuant to the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq*., that permit, *inter alia*, the processing, development, recreational use, and sale of marijuana in Michigan, specifically including the license to Defendant HiCloud that permits it to operate an adult use processor establishment in the state of Michigan;

E)      to issue an injunction enjoining Defendant Newfield's zoning laws and ordinances that permit the operation of marijuana establishments/facilities in the township, as set forth in this Complaint;

F)      to issue an injunction abating the nuisance caused by Defendant HiCloud as set forth in this Complaint;

G)      to issue an injunction prohibiting Defendant Newfield from permitting marijuana establishments/facilities, which are public nuisances and which violate federal law, in the township;

H)      to award Plaintiffs nominal damages as set forth in this Complaint;

I)      to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

J)      to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

**THE MUISE LAW GROUP, PLLC**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@muiselawgroup.com

**AMERICAN FREEDOM LAW CENTER**

/s/ *David Yerushalmi*
David Yerushalmi, Esq.* (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20006
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@americanfreedomlawcenter.org

*Attorneys for Plaintiffs*