IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

**JAMES DRAPER** and **CARRIE DRAPER**,

     Plaintiffs,

v.

**NEWFIELD TOWNSHIP**; **BRIAN HANNA**, in his
official capacity as the Executive Director of the
Cannabis Regulatory Agency of the Michigan
Department of Licensing and Regulatory Affairs;
**HICLOUD, LLC**; and **STEVEN MICKLIN**,
individually and in his official capacity as Zoning
Administrator for Newfield Township, Michigan,

     Defendants.

No. 1:24-cv-01305-PLM-PJG

Honorable Paul L. Maloney

---

### <u>DEFENDANTS NEWFIELD TOWNSHIP AND STEVEN MICKLIN'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND</u>

NOW COME Defendants, Newfield Township and Steven Micklin, by and through their

attorneys, Plunkett Cooney, and for their answer to Plaintiff's Amended Complaint, states as

follows:

### INTRODUCTION

1.    This case seeks to protect and vindicate fundamental constitutional and
federal rights and to abate a nuisance unlawfully permitted by local and state government
officials that has resulted in Plaintiffs' loss of the use and enjoyment of their property, a
diminution in the value of Plaintiffs' property, and physical harm to Plaintiffs and their
children. This action is brought under the First and Fourteenth Amendments to the United
States Constitution; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. § 1964(c); 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201; Michigan
law; and the equitable powers of this Court.

**<u>ANSWER</u>:**    **To the extent that the Plaintiffs allege Defendants Newfield Township or**

**Steven Micklin acted in any way to cause harm to Plaintiffs or their property, those**

**allegations are denied as untrue. It is further denied as untrue that Plaintiffs' may**

**allege damages to their children as damages to themselves, as their children are not**

**parties to this case nor have Plaintiffs represented that they are acting on the behalf**

**of their children. The rest of the allegations contained in paragraph 1 are improperly**

**pled or misstated legal conclusions to which no response is required.**

2.      Plaintiff James Draper seeks a declaration that the retaliatory actions of certain Defendants in response to his public opposition to the development of marijuana establishments/facilities in his community and neighborhood violated his rights protected by the First and Fourteenth Amendments as set forth in this First Amended Complaint.

**ANSWER:    To the extent that Plaintiff is implying that Defendants Newfield**

**Township or Steven Micklin have committed "retaliatory actions" or in any way**

**violated his Constitutional rights, those allegations are denied as untrue.**

3.      Plaintiffs seek a declaration that the marijuana establishment/facility operated by Defendants HiCloud, LLC and Cali is a nuisance as its operation violates state and federal law and causes harm to Plaintiffs, their children, and Plaintiffs' property and an injunction abating this nuisance; a declaration that the license issued by the Michigan Cannabis Regulatory Agency to Defendant HiCloud, LLC pursuant Michigan's licensing scheme (Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., also referred to as "MRTMA"), which permits, *inter alia*, the processing, development, recreational use, and sale of marijuana, is unlawful as it authorizes and permits unlawful "racketeering activity" under RICO and has caused a nuisance *per se*, thereby causing harm to Plaintiffs' property, and an injunction enjoining the same; a declaration that Defendant Newfield Township's zoning ordinances that authorize and permit the operation of Defendant HiCloud, LLC's marijuana establishment/facility in the township is unlawful as it authorizes and permits unlawful "racketeering activity" under RICO and has caused a nuisance *per se*, thereby causing harm to Plaintiffs' property, and an injunction enjoining the same; a declaration that Defendant Cali violated RICO and an injunction enjoining his unlawful racketeering activity as set forth in this First Amended Complaint; an award of compensatory, nominal, and treble damages as set forth in this First Amended Complaint; and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 1964 (RICO), and other applicable laws.

**ANSWER:    The allegations contained in paragraph 3 regarding Defendant Newfield**

**Township are denied as untrue. It is also denied as untrue that punitive damages can**

**be awarded against a governmental entity.**

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a).

**ANSWER:      It is admitted that this Court has jurisdiction over matters arising under the United States Constitution and federal law and may choose to exercise supplemental jurisdiction over claims arising under state law.**

5.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

**ANSWER:      The allegations contained in paragraph 5 do not contain properly pled factual allegations but instead contain improperly pled legal conclusions that do not call for a response. To the extent a response is needed, Defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 5.**

6.      Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988, 18 U.S.C. § 1964, and other applicable law.

**ANSWER:      The allegations contained in paragraph 6 do not contain properly pled factual allegations but instead contain improperly pled legal conclusions that do not call for a response. To the extent a response is needed, Defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 6, but further state that punitive damages may not be sought or awarded against a governmental entity.**

7.      Plaintiffs' claim for damages is authorized by 42 U.S.C. § 1983 and 18 U.S.C. § 1964.

**ANSWER:**    **The allegations contained in paragraph 7 do not contain properly pled**

**factual allegations but instead contain improperly pled legal conclusions that do not**

**call for a response. To the extent a response is needed, Defendants are without**

**knowledge or information sufficient to form a belief as to the truth of the legal**

**conclusions contained in paragraph 7, but further state that punitive damages may**

**not be sought or awarded against a governmental entity.**

   8.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and Defendant Hanna and the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs are located in this district.

**ANSWER:**    **It is admitted that venue is proper before this Court, but it is denied as**

**untrue that the Plaintiff has any valid claims against Defendants Newfield Township**

**or Steven Micklin.**

## PARTIES

   9.  Plaintiffs James Draper (also referred to as "Jim Draper") and Carrie Draper (also collectively referred to as the "Drapers") are adult citizens of the United States. The Drapers reside in Defendant Newfield Township (also referred to as "Defendant Newfield"), which is located in Oceana County, Michigan. Plaintiffs Jim and Carrier Draper previously owned, through a limited liability company, commercial properties in the Village of Hesperia, Michigan. These properties were sold in January 2025.

**ANSWER:**    **It is admitted that Newfield Township is a municipality located in Oceana**

**County, Michigan. Defendants Newfield Township and Steven Micklin are without**

**knowledge or information sufficient to form a belief as to the truth of the remaining**

**allegations contained in paragraph 9.**

   10.  Defendant Newfield is a municipal entity organized and existing under the laws of the State of Michigan. It is a municipal corporation with the right to sue and be sued. Defendant Newfield enacted and enforces zoning ordinances that permit the development of marijuana establishments/facilities, including Defendant HiCloud, LLC and Oceana Gardens among others, within its jurisdiction.

**ANSWER**:    **It is admitted that Newfield Township is a duly incorporated municipal entity under the laws of the State of Michigan and that it has zoning ordinances in compliance with the laws of the State of Michigan concerning the regulation and taxation of Marihuana.**

11.    Defendant Brian Hanna is the executive director of the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs. The Cannabis Regulatory Agency (also referred to as "CRA") is responsible for issuing state licenses under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate, *inter alia*, adult use processor establishments in the state of Michigan. Defendant Hanna is sued in his official capacity only.

**ANSWER**:    **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.**

12.    Defendant HiCloud, LLC (also referred to as "Defendant HiCloud") is a corporation operating under the laws of the State of Michigan. Defendant HiCloud holds an active state license under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate an adult use processor establishment in the state of Michigan. Defendant HiCloud is operating its marijuana facility in Defendant Newfield pursuant to this state license and Defendant Newfield's zoning laws and ordinances.

**ANSWER**:    **It is admitted that HiCloud, LLC, operates a marihuana facility in compliance and conformity with the laws of the State of Michigan and Newfield Township's zoning ordinances. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12.**

13.    Defendant Endrit Cali is the owner, operator, and resident agent of Defendant HiCloud. Defendant Cali acquired or maintained, directly or indirectly, an interest in or control of Defendant HiCloud and/or is employed by or associated with Defendant HiCloud. Defendant Cali conducts the affairs of this enterprise through a pattern of racketeering activity as defined by RICO, including, *inter alia*, engaging in acts indictable under federal law, including drug-related activity that is punishable under federal law; dealing in a controlled substance (marijuana) as defined in the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (also referred to as "CSA"); and the felonious manufacture, receiving, selling, or otherwise dealing in a

controlled substance as defined by the CSA. Defendant Cali, as the owner, participated directly or indirectly in the conduct of the enterprise's affairs. That is, Defendant Cali participated in the operation or management of the enterprise itself. These predicate offenses (violations of federal law) are part of a pattern of racketeering activity under RICO as they are part of Defendant HiCloud's ongoing and regular way of doing business.

**ANSWER**:     **Defendants are without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 13.**

14.     Defendant Steven Micklin is the Zoning Administrator for Defendant Newfield. He is also the Zoning Administrator for the Village of Hesperia, Michigan. Defendant Micklin is responsible for issuing ordinance violation citations in Defendant Newfield and in the Village of Hesperia. Defendant Micklin is sued individually and in his official capacity as the Zoning Administrator for Defendant Newfield.

**ANSWER**:     **It is admitted that Steven Micklin is the Zoning Administrator for**

**Newfield Township and for the Village of Hesperia.**

## STATEMENT OF FACTS

15.     The Drapers' residence is located on 184th Avenue in Hesperia, Michigan, which is located in Defendant Newfield. The Drapers and their five children live at this property.

**ANSWER**:     **It is admitted that Plaintiffs own a property located at 4330 S 184th Ave,**

**Hesperia, Michigan. The defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the remaining allegations contained in paragraph 15.**

16.     The Drapers' purchased this property in 2011 and moved into their home that same year.

**ANSWER**:     **Defendants are without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained paragraph 16.**

17.     Less than 300 yards (approximately 728 feet) from the Drapers' property is a marijuana establishment/facility operating as Defendant HiCloud. Defendant HiCloud is physically located at 7655 E M-20 in Hesperia, Michigan. This marijuana establishment/facility began operating at this location in or about 2021. Consequently, when the Drapers purchased and occupied their property in 2011, Defendant HiCloud's marijuana establishment/facility was not operating.

**ANSWER:**    **It is admitted that HiCloud, LLC has operated a facility at 7655 E M-20,**

**Hesperia, Michigan since 2021. The defendants are without knowledge or information**

**sufficient to form a belief as to the truth of the remaining allegations contained in**

**paragraph 17.**

18.    According to the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs, Defendant HiCloud holds an active state license under the Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951, *et seq*., to operate an adult use processor establishment in the state of Michigan. Defendant HiCloud is operating in Defendant Newfield pursuant to this state license.

**ANSWER:**    **It is admitted that HiCloud, LLC has an active license issued by the State**

**of Michigan and operates its facility within Newfield Township pursuant to that**

**license as required by local ordinances.**

19.    Defendant HiCloud's operations include, *inter alia*, the manufacture, sale, distribution, and dealing in marijuana, a controlled substance under the CSA. At this property, Defendant HiCloud grows and processes marijuana for distribution and sale. Defendant HiCloud's marijuana operation is commerce and directly affects interstate commerce.

**ANSWER:**    **Paragraph 19 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the defendants are without knowledge or information**

**sufficient to form a belief as to the truth of the legal conclusions contained in**

**Paragraph 19.**

20.    Maintaining property for the manufacture and/or cultivation of marijuana is a crime under the CSA and is racketeering activity under RICO.

**ANSWER:**    **Paragraph 20 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the defendants are without knowledge or information**

sufficient to form a belief as to the truth of the legal conclusions contained in

Paragraph 20.

21.     Defendant Cali owns, is employed by, or is associated with Defendant HiCloud, and he conducts the affairs of this enterprise through a pattern of racketeering activity as defined by RICO, including, *inter alia*, engaging in acts indictable under federal law, including drug-related activity that is punishable under federal law; dealing in a controlled substance (marijuana) as defined in the CSA; and the felonious manufacture, receiving, selling, or otherwise dealing in a controlled substance as defined by the CSA. Defendant Cali, as the owner, participated directly or indirectly in the conduct of the enterprise's affairs. That is, Defendant Cali participated in the operation or management of the enterprise itself. These offenses are part of a pattern of racketeering activity under RICO as they are part of Defendant HiCloud's ongoing and regular way of doing business and have been since 2021. In other words, these predicate offenses are a pattern of racketeering activity—a series of ongoing and related predicates that together demonstrate the existence or threat of continued criminal activity under RICO.

**ANSWER:     Paragraph 21 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the legal conclusions contained in paragraph 21 are**

**denied as untrue.**

22.     According to public records, Defendant HiCloud was subject to multiple formal complaints filed by the CRA regarding alleged violations of the MRTMA and/or related administrative rules. A copy of one of these complaints is attached to this First Amended Complaint as Exhibit A, and it is incorporated herein. This complaint further shows that Defendant Cali, through his direction, control, and management of Defendant HiCloud, is engaged in conduct of an enterprise through a pattern of racketeering activity that is proscribed by RICO.

**ANSWER:     Paragraph 22 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the legal conclusions contained in paragraph 22 are**

**denied as untrue.**

23.     For example, as set forth in the attached complaint, on November 9, 2023, Defendant Cali was stopped by the Michigan State Police while driving a rental truck east on Interstate 96 near Lansing, Michigan. The truck contained 43.5 pounds of suspected marijuana flower, 3 jars of suspected marijuana wax oil, and 3 jars of suspected marijuana

powder. Defendant Cali was arrested, and the Clinton County prosecuting attorney charged him with a felony charge of possession with intent to deliver marijuana on November 10, 2023.

**ANSWER:**    **Defendants are without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 23.**

24.    Marijuana is a Schedule I controlled substance under the CSA and dealing in such a controlled substance as Defendant Cali does here through the operation of Defendant HiCloud pursuant to a license issued by the CRA constitutes unlawful racketeering activity under RICO.

**ANSWER:**    **Paragraph 24 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the legal conclusions contained in paragraph 24 are**

**denied as untrue.**

25.    Federal law regulating the processing, distribution, and use of marijuana is comprehensive. In fact, the Firearms Transaction Record (ATF Form 4473) used by the Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice, asks the following question when an individual seeks to purchase a firearm: "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside**." (ATF Form 4473) (emphasis added).

**ANSWER:**    **Defendants are without knowledge of information sufficient to form a**

**belief as to the truth of the allegations contained in paragraph 25.**

26.    The express purpose of the MRTMA is stated, in relevant part, as follows: "The purpose of [the MRTMA] is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older . . . . To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section." Mich. Comp. Laws § 333.27952. Consequently, the MRTMA authorizes and permits activity that constitutes unlawful racketeering activity under RICO.

**ANSWER:**    **Paragraph 26 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 26 are denied as untrue.**

27.    The MRTMA legalizes the possession, use, and consumption of marijuana, *see* Mich. Comp. Laws § 333.27955, which directly conflicts with federal law (RICO and the CSA).

**ANSWER:**    **Paragraph 27 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in Paragraph 27.**

28.    The MRTMA permits the operation of marijuana establishments/facilities, such as Defendant HiCloud, which directly conflicts with federal law (RICO and the CSA).

**ANSWER:**    **Paragraph 28 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 28 are denied as untrue.**

29.    Defendant HiCloud possesses a state license under the MRTMA to operate an adult-use marijuana processor establishment in the state of Michigan, and the operation of such establishments violates federal law (RICO and the CSA). The operation of this enterprise (Defendant HiCloud) is "racketeering."

**ANSWER:**    **Paragraph 29 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 29 are denied as untrue.**

30.     In 2022, Plaintiff Jim Draper started the process for a ballot initiative/proposal in accordance with the provisions set forth in the MRTMA (Mich. Comp. Laws § 333.27956) to prohibit the development of marijuana establishments/facilities in Newfield Township. This process included obtaining approval for the ballot language, obtaining blank petitions from the county clerk, circulating the petitions, and submitting the signed petitions to the county clerk for review. When the Oceana County Clerk approved the initiative/proposal for inclusion on the ballot, Joan David (the Newfield Township Supervisor) and Nancy Conley (the Newfield Township Clerk), as individuals, sued Oceana County to get the initiative/proposal removed from the ballot. The presiding judge ruled in their favor, concluding that the petition form used was an outdated version and that the petitions should have been turned in to the Newfield Township Clerk (Nancy Conley) instead of the Oceana County Clerk. The judge also directed the Oceana County Clerk to obtain the updated petition forms.

**ANSWER:**     **It is admitted that the Court ruled that Plaintiffs' petition form should have been turned into Defendant Newfield Township.**

31.     At a subsequent Newfield Township board meeting, the board voted (3 to 2) to approve the payment of the attorney's fees incurred by Joan David and Nancy Conley for filing the lawsuit challenging the ballot initiative/proposal.

**ANSWER:**     **It is admitted that the Newfield Township Board voted to approve the legal bills related to the successful challenge of the improperly filed ballot petitions.**

32.     Plaintiff Jim Draper subsequently received the updated petition forms from the Oceana County Clerk, circulated them yet again, gathered the required number of signatures, and then attempted to submit them to the Newfield Township Clerk, Nancy Conley. But Mrs. Conley refused to accept them, forcing Plaintiff Jim Draper to file a lawsuit against her to get the petitions accepted. The judge in the proceeding ordered Mrs. Conley to accept the petitions, and the initiative/proposal was placed on the ballot.

**ANSWER:**     **It is admitted that the Newfield Township Clerk was ordered to accept petitions filed by Plaintiff.**

33.     Once the initiative/proposal was placed on the ballot, Defendant Newfield officials began a campaign of scaring residents into voting against the initiative/proposal by stating that if the initiative/proposal passed, the township would be sued by the marijuana companies and it (the township) would not be able to afford the litigation. As a result, according to Defendant Newfield officials, the township residents' property taxes would increase drastically and some may even lose their homes due to the increase in taxes caused by the litigation.

**ANSWER:**     **The allegations contained in paragraph 33 are denied as untrue.**

60268894.1

34.     In an official newsletter published by Defendant Newfield, it stated the following regarding the ballot initiative/proposal: "Proposal to repeal Ordinance authorizing and permitting commercial Marihuana facilities. (This proposal was not put on the ballot by the Newfield Township Board) (If it passes all marijuana facilities would be shut down and the Township could face possible sever consequences)."

**ANSWER:** **The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 as a copy of the alleged newsletter has not been produced or otherwise identified to verify the accuracy of the alleged quotation.**

35.     Defendant Micklin also posted his opposition to this ballot initiative/proposal on social media, stating, *inter alia*, "If the Township is sued, it would be VERY EXPENSIVE! The Township would have to cover the costs of it's (sic) legal fees and quite possibly the costs that the facilities incur! And that's just the start. There would be the cost of lost products and investments these folks made (about $12M)! . . . This terrible outcome is not guaranteed. But do you want to take a chance on your property taxes possibly doubling? I sure don't!!"

**ANSWER:** **It is admitted as true that Micklin posted his personal thoughts about a proposal on his personal social media page. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35.**

36.     In another social media post, Defendant Micklin stated, in relevant part, "Can you imagine what our tax burden would be if the facilities were shut down and the township was liable for a multi-million dollar (sic) settlement?! We could be paying well over $1,000/year in additional taxes! And it would be court ordered without a township vote! So I wanted to clear up that us taxpayers could be liable for a large settlement if the ballot initiative passes! I would respectfully suggest voting NO on the proposal!"

**ANSWER:** **It is admitted as true that Micklin posted his personal thoughts about a proposal on his personal social media page. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 36.**

37.    Jay Peasley, a former member of the Newfield Township's planning commission and a strong supporter of marijuana establishments/facilities, addressed the township's board during a public meeting and submitted a letter urging the voters to reject the ballot initiative/proposal, stating, in relevant part, that if the ballot initiative/proposal passes, the township's residents would be responsible for the cost of the inevitable litigation through a dramatic increase in property taxes, which "will bankrupt many township residents. One would be forced to sell their home and move else where (sic), if one could sell it. No one would want to buy a property that has a tax lien of almost $100,000."

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 37.**

38.    The ballot initiative/proposal was ultimately defeated in the November 2022 election.

**ANSWER:**    **Admitted.**

39.    In 2023, Defendant HiCloud submitted an application for a special use permit, seeking to expand its existing commercial marijuana operation onto a neighboring property in Defendant Newfield that is zoned for residential use. This request violated Michigan state law as well as Defendant Newfield's zoning ordinances as commercial marijuana operations are not permitted on property zoned for residential use. Moreover, this request violated federal law as the MRTMA and associated laws authorizing and legalizing, *inter alia*, the processing, development, sale, and use of marijuana in Michigan for recreational purposes are contrary to federal law (CSA and RICO) by, *inter alia*, authorizing and permitting unlawful "racketeering activity" under RICO.

**ANSWER:**    **Paragraph 39 does not contain properly pled factual allegations but**

**instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, the legal conclusions contained in paragraph 39 are**

**denied as untrue.**

40.    In fact, prior to this request to expand its existing facilities, Defendants Newfield and Micklin permitted Defendant HiCloud to operate approximately half of its marijuana facility on property that was zoned for residential use. Thus, prior to its request to expand, Defendant HiCloud was operating its marijuana facility in violation of local and state law, as well as federal law.

**ANSWER:**    **The allegations contained in paragraph 40 are denied as untrue.**

41.     Plaintiff Jim Draper has publicly expressed opposition during township board meetings to the operation of marijuana establishments/facilities in Defendant Newfield and in the local communities, including publicly opposing the operation of Defendant HiCloud, which is permitted to operate on property zoned for residential use by Defendants Newfield and Micklin.

**ANSWER:     It is admitted that Plaintiff Jim Draper has publicly expressed opposition**

**to the operation of marijuana establishments/facilities at Newfield Township Board**

**Meetings.**

42.     Plaintiff Jim Draper also publicly expressed opposition to Defendant HiCloud's special use request, sending Defendant Newfield a letter from a lawyer that set forth the law demonstrating that the requested expansion was illegal. The letter was dated March 20, 2023. Plaintiff Jim Draper also submitted a formal "Public Safety Ordinance Complaint" on or about June 9, 2023, related to this expansion request. Defendant Newfield rejected Plaintiff Jim Draper's opposition to this development and approved the special land use permit, allowing the unlawful expansion to occur.

**ANSWER:     It is admitted that a Special Use Permit was granted to HiCloud, LLC in**

**2023. It is also admitted that a letter erroneously claiming that the Special Use Permit**

**was contrary to the current law was sent on Plaintiffs' behalf. The remaining**

**allegations contained in paragraph 42 are denied as untrue.**

43.     In 2023, Plaintiff Jim Draper filed a *pro se* lawsuit in Circuit Court against Defendant Newfield in an effort to challenge the decision granting the special land use permit. The lawsuit was dismissed at the pleading stage because it was procedurally defective. No nuisance claims were advanced in this state court proceeding nor were any substantive issues decided.

**ANSWER:     It is admitted that Plaintiff's lawsuit against Defendant Newfield**

**Township in Oceana County Circuit Court was dismissed.**

44.     The Drapers live on a rural five-acre parcel, and they enjoy spending time outside when the weather is nice. The nearby marijuana establishment/facility, Defendant HiCloud, produces a strong, heavy smell caused by, *inter alia*, the airborne terpenes and cannabinoids. The overwhelming smell of these emissions typically starts in June and continues to build in intensity thru the month of October. This is the best time of year to be outside; however, the Drapers have to leave their home to enjoy the outdoors due to the emissions coming from the facility. When they are home, the Drapers cannot open their

windows, but instead have to keep the house sealed up during the summer and early Fall as a result of the emissions.

**ANSWER**:   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.**

45.    This neighboring illegal enterprise under federal law directly reduces the present value of Plaintiffs' property by openly operating a criminal enterprise, and it directly causes harmful, noxious emissions and odors to infiltrate Plaintiffs' property, thereby interfering with Plaintiffs' present use and enjoyment of the property and further reducing the property's present value by burdening it with those emissions and odors.

**ANSWER**:   **Paragraph 45 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 45 are denied as untrue.**

46.    The noxious odor and emissions from the marijuana establishment/facility makes Plaintiffs' property less suitable for recreational and residential purposes, interferes with Plaintiffs' use and enjoyment of their property, and diminishes the property's value. Consequently, the operation of Defendant HiCloud both interferes with Plaintiffs' present use and enjoyment of their property and causes a diminution in market value by subjecting the property to the operation's noxious emissions and by the existence of this active criminal enterprise nearby.

**ANSWER**:   **Paragraph 46 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 46 are denied as untrue.**

47.    Under Michigan law, Plaintiffs have a protected property interest in the value, use, and enjoyment of their property. The operation of Defendant HiCloud's marijuana establishment/facility, which Defendant Cali owns, manages, directs, participates in, and/or maintains, directly and proximately causes injury to Plaintiffs' property.

**ANSWER**:   **Paragraph 47 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the**

**extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 47.**

48.     As Christians, the Drapers do their best to raise their children with a Biblical worldview. Based on their sincerely held religious beliefs, the Drapers are strongly opposed to recreational drug use. The Drapers are now forced to raise their children in a home that smells of marijuana. Their clothes smell like marijuana. When they go to the grocery store and return to their car in the parking lot, their car smells like marijuana. People who do not know the Drapers would reasonably conclude that they are drug users. And it is difficult to have people visit their home because it smells like a drug house during the summer and early Fall.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.**

49.     Several of the Draper children get headaches from the smell of the emissions coming from Defendant HiCloud's marijuana facility. One child's allergies flare up as a result. For their youngest child, the headaches often become migraines. Plaintiff Carrie Draper also suffers headaches as well as anxiety from the emissions. Her doctor advised her to leave the home for the day when these symptoms occur, which she has done on many occasions and will continue to do.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.**

50.     Plaintiff Jim Draper has been a vocal opponent of Defendant HiCloud's marijuana operation and to the operation of marijuana establishments/facilities in general, often expressing his opposition to Defendant Newfield officials, including Defendant Micklin, during township board meetings. As a result, Defendant Newfield officials, including Defendant Micklin, have retaliated against him for his public opposition by issuing and threatening to issue ordinance violations. These retaliatory tactics began in 2021, and the threats continue to this day.

**ANSWER:     It is admitted that Plaintiff has made public comment opposing the operation of marihuana facilities. The remaining allegations contained in paragraph 50 are denied as untrue.**

51.     Defendant Newfield and its officials have developed and enforce an official policy of intimidation and retaliation against Plaintiff Jim Draper for his public opposition to the operation of marijuana establishments/facilities in the township.

**ANSWER:**     **The allegations contained in paragraph 51 are denied as untrue.**

52.     Defendant Newfield has retaliated and continues to retaliate against Plaintiff Jim Draper pursuant to an official municipal policy of intimidation and retaliation. In particular, Defendant Newfield, through its elected officials and employees, formed a premeditated plan to intimidate Plaintiff Jim Draper in retaliation (a) for his public criticism of Defendant Newfield officials because of the favoritism they give to the marijuana industry operating within the township, (b) for Plaintiff Jim Draper's efforts to prohibit marijuana establishments/facilities in the township via a ballot initiative/proposal, and (c) for Plaintiff Draper's filing of a lawsuit challenging Defendant Newfield's unlawful decision to grant Defendant HiCloud a special use permit to expand its illicit marijuana operation. Defendant Newfield, through the same high officers, executed that plan by selectively enforcing the law and directing the issuance of ordinance violations against Plaintiff Jim Draper.

**ANSWER:**     **The allegations contained in paragraph 52 are denied as untrue.**

53.     A former township official was present in the township office during a conversation between Dennis David, the Newfield Township Sexton and husband of the Newfield Township Supervisor, and Defendant Micklin. During this conversation, the former official heard Mr. David and Defendant Micklin discussing the potential violations that Plaintiff Jim Draper kept raising against the marijuana establishments/facilities, particularly during the township board meetings. The former official heard Defendant Micklin say, "if he [Plaintiff Jim Draper] wants to play violations, I can find violations on him, too," or words to that effect. At that point, Mr. David said, "be careful with that. You can't make it look like retaliation," or words to that effect.

**ANSWER:**     **The allegations contained in paragraph 53 are denied as untrue.**

54.     Shortly after that conversation, Plaintiff Jim Draper received his first violation letter from Defendant Newfield. The violation notice was related to a small windmill that Plaintiff Jim Draper has on his property. Evidence shows that the complaint was initiated and signed by another Defendant Newfield employee/official—Jay Peasley, a Planning Commission member at the time. Mr. Peasley was one of the driving forces behind the development and operation of marijuana establishments/facilities in the township. By signing this formal complaint, Mr. Peasley was assisting Defendant Micklin with enforcing the policy of intimidation and retaliation, and he was helping to protect Defendant HiCloud in the process.

**ANSWER:**     **It is admitted that Plaintiff was operating a windmill without the required permits and was contacted by the Township regarding his violation after it**

was reported by Newfield Township resident Jay Peasley. The remaining allegations

contained in paragraph 54 are denied as untrue.

55.    Plaintiff Jim Draper responded to the notice of violation by asserting his innocence, noting that the windmill at issue was not in violation of any township ordinance. As of this date, Defendant Newfield has not pursued any further action related to this violation. However, Defendant Newfield officials still hold this alleged violation over Plaintiff Jim Draper's head, as discussed below.

**ANSWER:    It is admitted that Defendant Newfield Township has not issued Plaintiff**

**a citation for his ongoing violation of Township ordinances. The remaining allegations**

**contained in paragraph 55 are denied as untrue.**

56.    Following Plaintiff Jim Draper's opposition to Defendant HiCloud's request in 2023 for a special land use permit (including Plaintiff's submission of the attorney letter setting forth the illegality of this special land use request and his filing of the *pro se* lawsuit), Defendant Newfield threatened yet another ordinance violation.

**ANSWER:    The allegations contained in paragraph 56 are denied as untrue.**

57.    In a letter to Plaintiff Jim Draper dated June 16, 2023, Defendant Newfield (through Defendant Micklin) falsely claimed that Plaintiff Jim Draper was unlawfully operating a commercial business within a residential zoning district (*i.e.*, that he was operating a business from his private residence). During the exchange of written communications between Plaintiff Draper and Defendant Micklin regarding this latest violation, Defendant Micklin vowed to resurrect the citation issued in 2021 related to Plaintiff Draper's windmill. Throughout, Plaintiff Draper has asserted his innocence, and he has demanded that the matters proceed to a judge for final determination. Defendant Newfield has not followed up on any of these alleged violations.

**ANSWER:    It is admitted that defendants reached out via letter to Plaintiff regarding**

**his ongoing violation of Newfield Township ordinances related to his operation of the**

**Domestic Limited Liability Company Draper NDT Services and Consulting, LLC, EIN:**

**801305568, registered by James A Draper II at 4330 S 184th Ave, Hesperia, Michigan,**

**49421, which, according to paragraph 15 of his First Amended Complaint, is Plaintiff's**

**home address. It is further admitted that, to defendants' collective knowledge,**

**Plaintiff has not yet corrected his other ongoing violation relating to his windmill. The**

**remaining allegations contained in paragraph 57 are denied as untrue.**

58.    During a Newfield Township board meeting on June 20, 2023, Defendant Micklin is seen on video pointing his finger at Plaintiff Jim Draper and stating, "If I want to retaliate, I have lots of other ways," or words to that effect.

**ANSWER:**    **The allegations contained in paragraph 58 are denied as untrue.**

59.    As noted, Plaintiff Draper often speaks at public meetings in opposition to the development of marijuana establishments/facilities in the township and surrounding areas. Frequently, there would be many angry residents in the same situation as Plaintiff Draper, agreeing with him at the meetings. These residents would often gather at the Drapers' home after the meetings. At times, a black SUV would drive by the home slowly, turn around at the end of the Drapers' property, and then drive slowly in the opposite direction. This happened many times following the township meetings, and it was clearly intended as an act of intimidation. The Newfield Township supervisor's husband would often do the same (drive by slowly, turn around, and then drive by slowly in the opposite direction). In response, Plaintiff Jim Draper constructed a barrier by placing round hay bales on the edge of his property along the road and by stacking firewood in front of the entire length of his house because he and others were afraid there could be a shooting. The intimidation was effective.

**ANSWER:**    **Defendants are without knowledge or information sufficient to form a**

**belief as to Plaintiff's concern that he could be shot through hay bales and/or a stacked**

**firewood barrier. The remaining allegations contained in paragraph 59 are denied as**

**untrue.**

60.    During some Newfield Township board meetings, the township hall would fill up with people who support marijuana establishments/facilities. During the meetings, these people would jeer and harass residents who opposed the facilities. While such harassment is contrary to the rules of the public meetings, Defendant Newfield officials would allow it. It is believed that most of these supporters were brought in from out of state as there would be many out-of-state plates in the parking lot when this happened.

**ANSWER:**    **It is admitted that supporters of both Plaintiff's position and the legal**

**operation of marihuana facilities would attend Newfield Township Board Meetings.**

**The remaining allegations contained in paragraph 60 are denied as untrue.**

61.     Plaintiff Jim Draper is a staunch supporter of the Second Amendment. Before moving to Michigan twenty years ago, the Drapers lived in Montana. Plaintiff Jim Draper regularly open carried a handgun while he lived in Montana, and he continued to do so in Michigan. Carrying a handgun was never an issue; he carried in Newfield Township for years without a problem (he has a valid CPL). When Plaintiff Jim Draper started attending Newfield Township meetings, he would carry a holstered handgun. False rumors started to spread that he was brandishing his firearm and intimidating people in the meetings. As a result, he quit carrying at the public meetings. At one point (after he had stopped carrying a firearm to the meetings), the Newfield Township supervisor, Joan David, went to the County Sherriff with audio of Plaintiff Jim Draper speaking at a meeting. The supervisor told the Sherriff that while Plaintiff Draper was making his public statement, he was patting a gun on his side in a threatening manner. The Sherriff told Plaintiff Draper about this conversation, and he told Plaintiff Draper that he knew him well enough to know that it wasn't true. The meeting was video recorded, so Plaintiff Jim Draper watched the video of the meeting. The video clearly shows that Plaintiff Jim Draper did not have a firearm on his person and that his hands remained on the paper from which he was reading his statement the entire time.

**ANSWER:**     **Defendants are without knowledge or information sufficient to form a**

**belief as to the allegations contained in paragraph 61.**

62.     Several government officials who are supportive of the marijuana industry in Defendant Newfield (Joan David, Newfield Township Supervisor; Nancy Conley, Newfield Township Clerk; Mary Hopkins, Newfield Township Treasurer; Rick Roberson, Newfield Township Trustee; and Wayne Ferris, Newfield Township Trustee) have received campaign support/funding from an organization called Make Newfield Great Again. The business address for Make Newfield Great Again is the same as Oceana Gardens, an organization that operates two marijuana establishments/facilities in Defendant Newfield. Consequently, there is a financial benefit/reward for Defendant Newfield officials to support the marijuana industry and to retaliate against those individuals, such as Plaintiff Jim Draper, who oppose it.

**ANSWER:**     **The allegations contained in paragraph 62 are denied as untrue.**

63.     Plaintiffs Jim and Carrie Draper are co-owners of Hesperia Antiques & Curio, LLC, which, until recently, owned commercial properties in the Village of Hesperia, Michigan (also referred to as the "Village"). As noted, these properties were sold in January 2025.

**ANSWER:**     **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 63.**

64.     In March 2024, the Village, through its attorneys and at the behest of Mike Farber, the President of the Village, and Defendant Micklin, the Zoning Administrator for the

Village, sent a notice to Plaintiff Jim Draper that the commercial properties owned by Hesperia Antiques & Curio, LLC violated certain provisions of the Village's ordinances. The Village didn't cite the actual owner of the commercial property, which is Hesperia Antiques & Curio, LLC, nor did it name Plaintiff Carrie Draper, a co-owner of the company. The Village only cited Plaintiff Jim Draper as he is the person who publicly opposes the operation of marijuana establishments/facilities in his community and because this is part of the plan and scheme to retaliate and selectively enforce the law against him for his public opposition to marijuana establishments/facilities.

**ANSWER:**      **The defendants, Newfield Township and Steven Micklin individually and in his official capacity as Newfield Township Zoning Administrator, are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64.**

65.      Following receipt of this notice, Plaintiff Jim Draper spoke with the Village President, Mike Farber, regarding the actions Plaintiff intended to take to remedy the alleged violations (unsecured windows and doors). The Village agreed to hold off any enforcement action to allow the remediation, which included securing the windows and doors.

**ANSWER:**      **The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65.**

66.      The Village President, Mr. Farber, is close friends with the Newfield Township Clerk, Nancy Conley, the Newfield Township Supervisor, Joan David, and Defendant Micklin. Mr. Farber was aware of the situation between Plaintiff Jim Draper and Defendant Newfield regarding Plaintiff's public opposition to marijuana establishments/facilities. Accordingly, Mr. Farber willingly cooperated with the plan to retaliate against Plaintiff Jim Draper for this opposition. Indeed, in or about the end of 2022, the Village hired Defendant Micklin to be its Zoning Administrator—making him the person responsible for enforcing ordinance violations within the Village.

**ANSWER:**      **The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66. By way of further answer, neither Newfield Township nor the Newfield Township Zoning Administrator have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

67.      Plaintiff Draper proceeded to take the remedial actions required by the Village by boarding up and securing the windows and doors of the commercial properties.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 67.**

      68.    While the Village and Defendant Micklin were focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that the home of the Village President, Mr. Farber, contains similar, and in some cases worse, violations of the Village's ordinances. Below are true and accurate photographs of Mr. Farber's residence, demonstrating numerous unsecured doors and windows and other ordinance issues that the Village and Defendant Micklin ignored while they pursued ordinance violations against Plaintiff Jim Draper:










**ANSWER:**    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68. By way of further answer, neither Newfield Township nor the Newfield Township Zoning Administrator have any responsibility relating to the Village of Hesperia's ordinance enforcement.

69.    As shown in the photographs above, Mr. Farber's property has broken or unsecured windows, holes in doors, a junk vehicle with no license plate stored on the property, missing siding, and other issues that violate the Village ordinances. At a minimum, this property is in a "state of disrepair which . . . present[s] an unsightly appearance." However, Defendant Micklin, the Zoning Administrator, is not pursuing ordinance violations against Mr. Farber for his property.

**ANSWER:**    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69. By way of further answer, neither Newfield Township nor the Newfield Township Zoning Administrator have any responsibility relating to the Village of Hesperia's ordinance enforcement.

70.    While the Village and Defendant Micklin were focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that a commercial building leased by Oceana Gardens (a marijuana company) located in the Village fails to comply with the Village's ordinances. Below are true and accurate photographs of this property, which is unsightly and in a state of disrepair:

 



**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 70. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

71.    While the Village and Defendant Micklin were focused on issuing ordinance violations against Plaintiff Jim Draper for his company's commercial properties, Village officials (including Defendant Micklin) completely ignore the fact that a commercial building that is attached to the Village Hall (this building was slated to be a marijuana facility, but the owners of the building have since put it up for sale) fails to comply with the Village's ordinances. Below are true and accurate photographs of this property, which is unsightly and in a state of disrepair:



**ANSWER:**    The defendants are without knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 71. By way of further

answer, neither Newfield Township nor the Newfield Township Zoning Administrator

have any responsibility relating to the Village of Hesperia's ordinance enforcement.

72.    There are many other properties in the Village that similarly violate the Village's ordinances that Defendant Micklin, as the Zoning Administrator, ignores while selectively enforcing the ordinances against Plaintiff Jim Draper. Indeed, there are numerous properties in the Village that are in a "state of disrepair" and which "present an unsightly appearance," as well as other ordinance violations. However, Defendant Micklin is not pursuing ordinance violations against these property owners.

**ANSWER:**    The defendants are without knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 72. By way of further

answer, neither Newfield Township nor the Newfield Township Zoning Administrator

have any responsibility relating to the Village of Hesperia's ordinance enforcement.

73.    Despite Plaintiff Jim Draper's good faith efforts (and "substantial progress") to remedy the alleged ordinance violations identified by Mr. Farber, the Village proceeded to issue citations to Plaintiff for having unsecured doors and windows. Three citations were issued: one on August 26, 2024 (Ticket No. 2210), one on September 12, 2024 (Ticket No. 2212), and one on September 23, 2024 (Ticket No. 2214) for maintaining a vacant or unused building (the building was used for storage; therefore, it was not a vacant building nor was it unused) with unsecured doors and windows.

**ANSWER:**    The defendants are without knowledge or information sufficient to form

a belief as to the truth of the allegations contained in paragraph 73. By way of further

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

74.    Following receipt of the citations, Plaintiff Jim Draper wrote a letter to Mr. Farber dated September 26, 2024, which set forth additional facts demonstrating the harassing nature of these citations. The letter stated in relevant part as follows:

Mike Farber,

Regarding Civil Infraction #2210, it instructed me to appear at the 79th District Court, but did not state what day I must appear by. I did go to the court and I was told that there was nothing filed there regarding myself or the Civil Infraction.

Today, I received 2 more Civil Infractions in the mail (#2212 and #2214). Both of these were for the same "zoning violation" as the #2210 Civil Infraction. #2212 instructed me to appear at the 79th District Court by September 26th (today). #2214 instructed me to appear at the 79th District Court by October 8th. Instead of wasting time and fuel, I called the Court today. I was told by the Court there is no point in coming in because they have no record of the Civil Infractions.

I respectfully ask that you stop the harassment and instead figure out what is holding up the process of the parcel division that was discussed with the Village Council. After months of leaving messages, I was finally able to speak with Barbie Eaton. I had to call [her] from a different phone number. She told me that Steve Micklin was supposed to get with you and approve the split. She stated that Steve Micklin indicated that her part was completed and it was now up to Steve and yourself to finish. At the last Village Council Meeting, you stated that everything was up to Barbie Eaton and you and Steve Micklin have nothing to do with it. There appears to be a conspiracy to hold up the process. When the truth comes out about what is really going on here, it will make quite a story.

I am sending this via certified mail to you and Brennen Gorman, Village Attorney.

Please start acting like a professional and stop throwing your weight around with bully tactics for your friends on the Newfield payroll.

**ANSWER:**    The defendants are without knowledge or information sufficient to form

**a belief as to the truth of the allegations contained in paragraph 74. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

75.    Plaintiff Jim Draper was trying to split his commercial properties in the Village so he could sell the building that is allegedly not in compliance with the Village ordinances. However, Plaintiff's efforts were constantly frustrated by Village officials.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 75. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

76.    Plaintiff Jim Draper followed up his September 26 letter with another letter to Mr. Farber and Mr. Gorman dated October 2, 2024. This letter read, in relevant part, as follows: Mike Farber, Village of Hesperia, Brennen Gorman,

> As you know, I have received 3 civil infractions (#2210, #2212 and #2214) on my property at 147 N. Division. All of the civil infractions were for "unsecured doors and windows." In my previous correspondence, I stated that I would secure the windows (as there were no unsecured doors) while the Village and Assessor get their story straight on splitting the lot.

> I went above and beyond the requirements and sheeted the entire west wall. I have included a picture. I intend on getting paint on it soon, but that is not a requirement for compliance. I would like, in writing, a statement from the Village that these civil infractions are closed and can be disregarded.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 76. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

77.    Rather than close the matter, Mr. Farber, the Village, and Defendant Micklin doubled-down by issuing three new citations. These citations were for the following alleged violations: Ticket No. 2217: "Violation of 91.06 Vacant building with unsecured openings, hazardous roof and missing siding"; Ticket No. 2218: "Violation of 91.06 – Unsecured vacant building with torn/damaged roof, openings in walls, unsecured doors, windows"; and Ticket No. 2220: "Violation of 91.06 – Unsecured vacant building with missing siding unsecured windows doors poor roof." As noted, the building was not "vacant" (nor "unused") as it was used for storage.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 77. By way of further**

answer, neither Newfield Township nor the Newfield Township Zoning Administrator

have any responsibility relating to the Village of Hesperia's ordinance enforcement.

78.    When Plaintiff Jim Draper contacted Village officials about these new citations,
he was told that his remediation was not good enough and that these properties had to be
what the Village attorney described as "rodent proof"—meaning that not even a mouse
should be able to enter the properties, which is a standard that is practically impossible to
comply with as all buildings have vents and other required openings that could permit a
rodent to enter. Defendant Micklin, the Village Zoning Administrator, was applying this
standard against Plaintiff Jim Draper, but he does not apply it against other properties in the
Village, as demonstrated in this First Amended Complaint.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 78. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

79.    And while these latest citations (Ticket Nos. 2217, 2218, and 2220) were
signed by "Mike Farber," the handwriting was that of Defendant Micklin, and they were all
mailed from a Village of Shelby post office. Defendant Micklin lives in the Village of Shelby
and Mr. Farber does not. In other words, the citations were the work of Defendant Micklin,
and they were all part of his efforts and those of Defendant Newfield to retaliate against
Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities in the
township.

**ANSWER:**    **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 79. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

80.    Realizing that these latest citations (Ticket Nos. 2217, 2218, and 2220) lacked
merit, particularly in light of the remedial actions ("substantial progress") taken by Plaintiff
Jim Draper to comply with the law, the Village attempted to strongarm Plaintiff Jim Draper
into admitting that he violated the ordinance (the Village wanted him to execute a "consent
judgment" that Village officials would hold over his head) in exchange for an agreement by
the Village not to prosecute the matter further. The proposed "consent judgment" also
included an agreement by Plaintiff Jim Draper to paint the plywood that he installed on the
side of the building (which he already told the Village he planned to do) once the weather
permitted and to provide a covering over some Tyvek he installed on the building. In good

conscience, Plaintiff Jim Draper could not admit to violating the ordinance as he always attempted to comply with the Village's demands and, at a minimum, he made "substantial progress" toward that end even while the Village kept "moving the goalposts" as to the specific alleged violations.

**ANSWER:** **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 80. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

81.    Prior to being presented with the "consent judgment" proposal, Plaintiff Jim Draper had a conversation with Mr. Farber after the Village Council meeting on December 9, 2024. During this conversation, Mr. Farber agreed that the repairs Plaintiff Jim Draper made to the building were sufficient to bring the building into compliance with the Village ordinance. Accordingly, there was no basis for the Village and Defendant Micklin to continue to pursue the ordinance violations against Plaintiff Jim Draper.

**ANSWER:** **The defendants are without knowledge or information sufficient to form**

**a belief as to the truth of the allegations contained in paragraph 81. By way of further**

**answer, neither Newfield Township nor the Newfield Township Zoning Administrator**

**have any responsibility relating to the Village of Hesperia's ordinance enforcement.**

82.    As set forth in this First Amended Complaint, Defendant Micklin has conspired with other government officials and former government officials, including but not limited to, Joan David, Nancy Conley, Jay Peasley, and Mike Farber, to retaliate against Plaintiff Jim Draper and to selectively enforce local ordinances against him for his public opposition to marijuana establishments/facilities.

**ANSWER:** **The allegations contained in paragraph 82 are denied as untrue.**

83.    As set forth in this First Amended Complaint, Defendants Newfield and Micklin selectively enforce the law to favor Defendant HiCloud and those who promote or support the marijuana industry, and Defendants Newfield and Micklin selectively enforce the law against those who oppose the marijuana industry, specifically including Plaintiff Jim Draper.

**ANSWER:** **The allegations contained in paragraph 83 are denied as untrue.**

84.    This retaliation and selective enforcement of the law against Plaintiff Jim Draper for publicly opposing the development of marijuana establishments/facilities in Defendant Newfield, and in particular the marijuana establishment/facility near his home

(Defendant HiCloud), has had a chilling effect on his First Amendment freedoms as these threats hang over his head each time he considers challenging anything that has to do with the development or operation of a marijuana establishment/facility in the township.

**ANSWER:**    **The allegations contained in paragraph 84 are denied as untrue.**

### FIRST CLAIM FOR RELIEF
### (First Amendment—Retaliation)

85.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:**    **Defendants incorporate their answers, paragraphs 1 – 84, collectively.**

86.    By reason of the retaliatory actions, specifically including the retaliatory policy, which was created, adopted, and enforced under the color of state law and authority, Defendants Newfield and Micklin have deprived Plaintiff Jim Draper of his fundamental rights protected by the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:**    **The allegations contained in paragraph 86 are denied as untrue.**

87.    Plaintiff Jim Draper's public opposition to marijuana establishments/facilities, which includes, *inter alia*, making public comments at Defendant Newfield board meetings, organizing a ballot initiative/proposal to prohibit such establishments/facilities in the township, filing formal complaints with Defendant Newfield, and filing a lawsuit against Defendant Newfield, is protected by the First Amendment. The U.S. Supreme Court has recognized the right to petition as one of the most precious liberties safeguarded by the Bill of Rights.

**ANSWER:**    **Paragraph 87 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 87.**

88.    The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech and other activities protected by the First Amendment.

**ANSWER:**    **Paragraph 88 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the**

extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 88.

89.    Plaintiff Jim Draper's right to be free from government retaliation for exercising his First Amendment rights is clearly established. U.S. Supreme Court decisions rendered long before the actions at issue in this case recognize that government officials may not retaliate against an individual for the exercise of protected First Amendment freedoms.

**ANSWER:**    **Paragraph 89 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 89.**

90.    The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out.

**ANSWER:**    **Paragraph 90 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 90.**

91.    As set forth in this First Amended Complaint, Plaintiff Jim Draper engaged in protected First Amendment activity, and this protected activity was a "substantial" or "motivating" factor in Defendant Newfield's and Defendant Micklin's decisions to take action against him.

**ANSWER:**    **The allegations contained in paragraph 91 are denied as untrue.**

92.    Defendants Newfield and Micklin would not have taken the same adverse action as set forth in this First Amended Complaint in the absence of Defendant Jim Draper's protected First Amendment activity.

**ANSWER:**    **The allegations contained in paragraph 92 are denied as untrue.**

93.    As set forth in this First Amended Complaint, there is no probable cause nor other justification for the ordinance violation notices/citations issued or threatened to be issued against Plaintiff Jim Draper by Defendants Newfield and Micklin, and Defendant Micklin is selectively enforcing the township and Village ordinances to retaliate against Plaintiff Jim Draper for his First Amendment activity.

**ANSWER:    The allegations contained in paragraph 93 are denied as untrue.**

94.    The violation notices/citations as set forth in the First Amended Complaint were issued pursuant to an official retaliatory policy devised by Defendant Newfield officials, including Defendant Micklin, against Plaintiff Jim Draper for opposing marijuana establishments/facilities in the township.

**ANSWER:    The allegations contained in paragraph 94 are denied as untrue.**

95.    Defendant Newfield's retaliatory policy and Defendant Micklin's retaliatory actions as set forth in this First Amended Complaint are viewpoint based in violation of the First Amendment.

**ANSWER:    The allegations contained in paragraph 95 are denied as untrue.**

96.    Defendant Newfield's retaliatory policy was a moving force behind the violation of Plaintiff Jim Draper's rights protected by the First Amendment as set forth in this First Amended Complaint.

**ANSWER:    The allegations contains in paragraph 96 are denied as untrue.**

97.    As a direct and proximate result of Defendant Newfield's and Defendant Micklin's violation of the First Amendment, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory relief and nominal damages.

**ANSWER:    The allegations contained in paragraph 97 are denied as untrue.**

### SECOND CLAIM FOR RELIEF
### (Fourteenth Amendment—Equal Protection)

98.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:    Defendants incorporate their answers, paragraphs 1 – 97, collectively.**

99.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants Newfield and Micklin have deprived Plaintiff Jim Draper of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:** **Paragraph 99 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 99.**

100.    Defendant Newfield's and Defendant Micklin's enforcement of the retaliatory policy as set forth in this First Amended Complaint violates the equal protection guarantee of the Fourteenth Amendment.

**ANSWER:** **Paragraph 100 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 100 are denied as untrue.**

101.    Defendant Newfield's and Defendant Micklin's selective enforcement of the zoning laws and ordinances against Plaintiff Jim Draper violates the equal protection guarantee of the Fourteenth Amendment.

**ANSWER:** **The allegations contained in paragraph 101 are denied as untrue.**

102.    By punishing Plaintiff Jim Draper for accessing a public forum for speech (township board meetings) based on the content and viewpoint of his speech, Defendants Newfield and Micklin have deprived Plaintiff of the equal protection of the law.

**ANSWER:** **Paragraph 102 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 102 are denied as untrue.**

103.    Defendant Newfield's retaliatory policy was a moving force behind the violation of Plaintiff Jim Draper's rights protected by the Fourteenth Amendment as set forth in this First Amended Complaint.

**ANSWER:** **The allegations contained in paragraph 103 are denied as untrue.**

104.    As a direct and proximate result of Defendant Newfield's and Defendant Micklin's violation of the Equal Protection Clause, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory relief and nominal damages.

**ANSWER:**    **The allegations contained in paragraph 104 are denied as untrue.**

### THIRD CLAIM FOR RELIEF
### (RICO – 18 U.S.C. § 1964(c))

105.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:**    **Defendants incorporate their answers, paragraphs 1 – 104, collectively.**

106.    As set forth in this First Amended Complaint, Defendant Endrit Cali violated RICO to the injury of Plaintiffs' property.

**ANSWER:    Paragraph 106 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 106 are denied as untrue.**

107.    RICO is to be read broadly. It creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of" 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). That is, RICO vests a private citizen with substantive rights to avoid "injur[ies]" to "his business or property" caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those federal rights. 18 U.S.C. § 1964(c).

**ANSWER:    Paragraph 107 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 107.**

108.    To maintain a cause of action under § 1964(c), a plaintiff must plead and ultimately prove: (1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury.

**ANSWER:**    **Paragraph 108 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 108.**

109.    As set forth in this First Amended Complaint, Defendant Cali formed, operates, controls, directs, conducts, participates in, and/or manages an enterprise (Defendant HiCloud) engaged in, or the activities of which affect, interstate or foreign commerce, that has and will continue to engage in a pattern of conduct (racketeering activity) that violates federal law (the CSA) through, *inter alia*, the cultivation and manufacture of marijuana for distribution and sale in violation of 18 U.S.C. § 1962.

**ANSWER:**    **Paragraph 109 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 109 are denied as untrue.**

110.    As set forth in this First Amended Complaint, this neighboring enterprise (Defendant HiCloud), which is illegal under federal law, directly reduces the present value of Plaintiffs' property by openly operating a criminal enterprise, and it directly causes harmful, noxious emissions and odors to infiltrate Plaintiffs' property, thereby interfering with Plaintiffs' present use and enjoyment of the property and further reducing the property's present value by burdening it with those emissions and odors. This injury to Plaintiffs' property was by reason of the predicate RICO violations.

**ANSWER:**    **The allegations contained in paragraph 110 are denied as untrue.**

111.    The noxious odor and emissions from the marijuana establishment/facility makes Plaintiffs' property less suitable for recreational and residential purposes, interferes with Plaintiffs' use and enjoyment of their property, and diminishes the property's value. Consequently, the operation of Defendant HiCloud both interferes with Plaintiffs' present use and enjoyment of their property and causes a diminution in market value by subjecting the property to the operation's noxious emissions and by the existence and operation of this criminal enterprise nearby.

**ANSWER:**    **The allegations contained in paragraph 111 are denied as untrue.**

112.    As set forth in this First Amended Complaint, through a pattern of racketeering activity, Defendant Cali acquired or maintained, directly or indirectly, an interest in or control of an enterprise (Defendant HiCloud) which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

**ANSWER:    Paragraph 112 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 112 are denied as untrue.**

113.    As set forth in this First Amended Complaint, at all relevant times, Defendant Cali was employed by or associated with an enterprise (Defendant HiCloud) that is engaged in, or the activities of which affect, interstate or foreign commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

**ANSWER:    It is admitted that Defendant Cali was employed by or associated with Defendant HiCloud. The remaining allegations contained in paragraph 113 are denied as untrue.**

114.    As a direct and proximate result of Defendant Cali's violation of RICO, Defendant Cali has injured Plaintiffs' property, entitling Plaintiffs to declaratory and injunctive relief and damages, including treble damages.

**ANSWER:    Paragraph 114 is not directed to Defendants and does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 114 are denied as untrue.**

115.    Pursuant to the broad remedies permitted by RICO (*see* 18 U.S.C. § 1964(a)), Plaintiffs request that the Court issue an injunction enjoining Defendant Hanna, in his official capacity, from issuing or reissuing any licenses pursuant to the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq.*, that permit Defendant HiCloud and/or Defendant Cali to manufacture, process, develop, sell, and/or deal in marijuana in violation of federal law, as set forth in this First Amended Complaint.

**ANSWER:**    **Paragraph 115 is not directed to Defendants and does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 115 are denied as untrue.**

116.    Pursuant to the broad remedies permitted by RICO (*see* 18 U.S.C. § 1964(a)), Plaintiffs request an injunction enjoining Defendant Newfield from authorizing or permitting Defendants HiCloud and/or Defendant Cali to operate a marijuana establishment/facility in Defendant Newfield, as set forth in this First Amended Complaint.

**ANSWER:**    **Paragraph 116 does not contain properly pled factual allegations calling for a response but instead contains improper legal conclusions. To the extent a response is needed, the improperly pled legal conclusions contained in paragraph 116 are denied as untrue.**

### FOURTH CLAIM FOR RELIEF
### (Michigan Law—Nuisance)

117.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:**    **Defendants incorporate their answers, paragraphs 1 – 116, collectively.**

118.    Michigan courts recognize essentially two categories of nuisance: private nuisance and public nuisance.

**ANSWER:**    **Paragraph 118 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 118.**

119.    A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land, whereas a public nuisance is an unreasonable interference with a common right enjoyed by the general public.

**ANSWER:**    Paragraph 119 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 119.

120.    Defendant HiCloud's marijuana operation as set forth in this First Amended Complaint is a private nuisance that invades Plaintiffs' private use and enjoyment of their land.

**ANSWER:**    The allegations contained in paragraph 120 are denied as untrue.

121.    A nuisance in fact (also referred to as a nuisance *per se*) is a subcategory of public nuisance.

**ANSWER:**    Paragraph 121 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 121.

122.    A public nuisance includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. The activity must be harmful to the public health, or create an interference in the use of a way of travel, or affect public morals, or prevent the public from the peaceful use of their land and the public streets.

**ANSWER:**    Paragraph 122 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 122.

123.    A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public.

**ANSWER:    Paragraph 123 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 123.**

124.    A nuisance that affects public health is typified by the release of harmful substances.

**ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124.**

125.    Under the Michigan Zoning Enabling Act, Mich. Comp. Laws § 125.3407, the use of land or a building in violation of a zoning law or ordinance is a nuisance *per se.*

**ANSWER:    Paragraph 125 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 125.**

126.    Defendant Newfield permits as matter of its local zoning laws and ordinances the operation of marijuana establishments/facilities in the township, including Defendant HiCloud, and these facilities are nuisances *per se* as they are proscribed by federal law.

**ANSWER:    The allegations contained in paragraph 126 are denied as untrue.**

127.    Private individuals who can show damages of a special character distinct and different from the injury suffered by the public generally may bring an action to abate a public nuisance arising from the violation of a zoning ordinance.

**ANSWER:    The allegations contained in paragraph 127 are denied as untrue.**

128.    Defendant HiCloud's operation violates Defendant Newfield's zoning ordinances by operating, in part, on land that is zoned residential. This operation also violates Michigan law, which similarly prohibits the operation of marijuana establishments/facilities on property zoned for residential use, and it violates federal law (CSA and RICO) by engaging in unlawful "racketeering activity," as set forth in this First Amended Complaint.

**ANSWER:**    **The allegations contained in paragraph 128 are denied as untrue.**

129.    Defendant HiCloud's activities directly and adversely affected Plaintiffs' recreational, aesthetic, and economic interests by harming Plaintiffs' use and enjoyment of their home and property and by causing physical harm and injury to Plaintiff Carrie Draper and to the Drapers' children.

**ANSWER:**    **The allegations contained in paragraph 129 are denied as untrue.**

130.    Plaintiffs are currently suffering special damages by the odors and release of substances into the air by Defendant HiCloud that are causing physical harm and that are disrupting Plaintiffs' use and enjoyment of their private property.

**ANSWER:**    **The allegations contained in paragraph 130 are denied as untrue.**

131.    Plaintiffs' status as a nearby (less than 300 yards away) property owner lends support to the finding that they can demonstrate special damages different from injury suffered by others in the community generally.

**ANSWER:**    **The allegations contained in paragraph 131 are denied as untrue.**

132.    The operation of Defendant HiCloud violates state and local zoning laws and ordinances, in addition to federal law (CSA and RICO).

**ANSWER:**    **The allegations contained in paragraph 132 are denied as untrue.**

133.    Despite the fact that state and local zoning laws and ordinances prohibit the operation of marijuana establishments/facilities on property zoned for residential use, Defendant Newfield permitted Defendant HiCloud to develop its original marijuana establishment/facility on such property (approximately half of the property was zoned for residential use), in violation of local, state, and federal law (CSA and RICO). Then, in 2023, Defendant Newfield granted Defendant HiCloud a special land use permit to expand its facilities onto property zoned for residential use, in violation of local, state, and federal law (CSA and RICO). Accordingly, the operation of Defendant HiCloud is a nuisance *per se*.

**ANSWER:**    **The allegations contained in paragraph 133 are denied as untrue, as are**

**the improperly pled legal conclusions contained in paragraph 133.**

134.    The MRTMA provides that "the property where the proposed marihuana establishment is to be located" may "not [be] within an area zoned for residential use." Mich. Comp. Laws § 333.27959. Defendant Newfield's zoning ordinance further provides that marijuana establishments/facilities are only permitted in certain non-residential districts. *See* Def. Newfield Zoning Ordinance, Art. 22.

**ANSWER:**    **Paragraph 134 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 134.**

135.    Defendant Newfield granted Defendant HiCloud's special land use application, permitting it to expand its marijuana establishment/facility onto property that is zoned for residential use in violation of state and local laws related to the zoning of such facilities and in violation of federal law (CSA and RICO).

**ANSWER:**    **Paragraph 135 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 135 are denied as untrue.**

136.    Because the operation of Defendant HiCloud's marijuana facility is a nuisance, Plaintiffs are entitled to an injunction abating the nuisance.

**ANSWER:**    **The allegations contained in paragraph 136 are denied as untrue.**

### FIFTH CLAIM FOR RELIEF
### (Equitable Relief – RICO, Nuisance, & Federal Preemption)

137.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:**    **Defendants incorporate their answers, paragraphs 1 – 136, collectively.**

138.    The scope of this Court's equitable powers to remedy wrongs is broad, for breadth and flexibility are inherent in equitable remedies. *See generally Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("[I]n a proper case, relief may be given in

a court of equity . . . to prevent an injurious act by a public officer.") (internal quotations and citation omitted).

**ANSWER:**    **Paragraph 138 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 138.**

139.    RICO grants this Court broad equitable powers to "prevent and restrain violations of" its provisions. 18 U.S.C. § 1964(a).

**ANSWER:**    **Paragraph 139 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 139.**

140.    The Declaratory Judgment Act provides, in relevant part, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

**ANSWER:**    **Paragraph 140 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 140.**

141.    The Declaratory Judgment Act is not a cause of action, and instead makes available a declaratory judgment in a case or actual controversy. Before invoking the Act, a federal court must already have jurisdiction.

**ANSWER**: **Paragraph 141 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 141.**

142.    As set forth in this First Amended Complaint, RICO vests a private citizen with substantive rights to avoid injuries to his property caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those rights. 18 U.S.C. § 1964(c).

**ANSWER**: **Paragraph 142 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 142.**

143.    Accordingly, "a case of actual controversy" exists between and among the relevant parties under RICO, and it exists under Michigan nuisance law, a controversy which is also within this Court's jurisdiction to decide.

**ANSWER**: **Paragraph 143 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 143.**

144.    Michigan law legalizing the operation of Defendant HiCloud and the actions of Defendant Cali at issue in this actual controversy does not preclude this Court from issuing the requested declaratory and injunctive relief under the federal preemption doctrine.

**ANSWER:**     **Paragraph 144 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 144.**

145.    The federal preemption doctrine owes its existence to Article VI of the U.S. Constitution, which makes the Constitution, and federal law enacted pursuant to it, the "supreme Law of the Land." U.S. Const. art. VI, cl. 2.

**ANSWER:**     **Paragraph 145 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 145.**

146.    The Supremacy Clause precludes courts from giving effect to state laws that conflict with federal laws.

**ANSWER:**     **Paragraph 146 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 146.**

147.    As set forth in this First Amended Complaint, Defendant Hanna in his official capacity lacks authority to issue Defendant HiCloud a license under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq.*, to permit the processing and/or distribution of marijuana because the United States Congress has acted to occupy the entire field and to preempt altogether any state regulation purporting to allow and/or legalize the processing, distribution, and/or use of marijuana, a Schedule I controlled substance under the CSA, and such a license authorizes and permits unlawful "racketeering activity" proscribed by RICO in this case. The granting of this license under the

MRTMA to Defendant HiCloud authorized and permitted the underlying predicate offenses set forth in this First Amended Complaint in violation of federal law (RICO).

**ANSWER:** **Paragraph 147 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 147.**

148.    The Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq*., as set forth in this First Amended Complaint, conflicts with and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law, including the CSA and RICO in this case.

**ANSWER:** **Paragraph 148 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 148.**

149.    The CSA is a comprehensive regulatory regime specifically designed to regulate the distribution, manufacture, sale, and use of controlled substances, including marijuana. RICO provides a private cause of action to remedy harms caused by, *inter alia*, violations of the CSA.

**ANSWER:** **Paragraph 149 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, defendants are without knowledge or information sufficient to form a belief as to the truth of the legal conclusions contained in paragraph 149.**

150.    There is clear conflict between Michigan state law and local law, including Defendant Newfield's zoning ordinances, that authorize and permit the operation of marijuana establishments/facilities, such as Defendant HiCloud, and federal laws, such as the

CSA and RICO, that make such practices illegal. Under the Supremacy Clause, federal law prevails and renders the state and local laws without effect when there is conflict, as in this case.

**ANSWER:**    **Paragraph 150 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 150 are denied as untrue.**

151.    Plaintiffs request that this Court declare that the license issued to Defendant HiCloud pursuant to the Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et seq*., violates federal law (CSA and RICO) as set forth in this First Amended Complaint and enjoin Defendant Hannah, in his official capacity, from further issuing such licenses to Defendant HiCloud.

**ANSWER:**    **Paragraph 151 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 151 are denied as untrue.**

152.    The authorization and permissions granted to Defendants HiCloud and Cali pursuant to Defendant Newfield's zoning ordinances authorized and permitted the violation of RICO in this case. Therefore, Plaintiffs request that this Court declare that Defendant Newfield's zoning ordinances that permit Defendants HiCloud and Cali to operate Defendant HiCloud's marijuana establishment/facility in Defendant Newfield as set forth in this First Amended Complaint violate federal law (CSA and RICO) and enjoin Defendant Newfield from further granting authorization and permission to Defendants HiCloud and Cali to operate a marijuana establishment/facility in the township.

**ANSWER:**    **Paragraph 152 does not contain properly pled factual allegations but instead contains improper legal conclusions that do not call for a response. To the extent a response is needed, the legal conclusions contained in paragraph 152 are denied as untrue.**

## SIXTH CLAIM FOR RELIEF
## (Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983)

153.    Plaintiffs hereby incorporate all stated paragraphs.

**ANSWER:**    **Defendants incorporate their answers, paragraphs 1 – 152, collectively.**

154.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendant Micklin acted jointly and conspired with other government officials, including but not limited to, Joan David, Nancy Conley, Jay Peasley, and Mike Farber, to violate Plaintiff Jim Draper's rights protected by the First and Fourteenth Amendments as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:**    **The allegations contained in paragraph 154 are denied as untrue.**

155.    Defendant Micklin and others conspired to punish Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities, as set forth in this First Amended Complaint.

**ANSWER:**    **The allegations contained in paragraph 155 are denied as untrue.**

156.    Defendant Micklin and others conspired to selectively enforce Defendant Newfield's and the Village's ordinances against Plaintiff Jim Draper for his public opposition to marijuana establishments/facilities, as set forth in this First Amended Complaint.

**ANSWER:**    **The allegations contained in paragraph 156 are denied as untrue.**

157.    As a direct and proximate result of this conspiracy to violate Plaintiff Jim Draper's rights protected by the First and Fourteenth Amendments, Plaintiff Jim Draper has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory relief and nominal damages.

**ANSWER:**    **The allegations contained in paragraph 157 are denied as untrue.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)    to declare that Defendants Newfield and Micklin violated the First and Fourteenth Amendments to the United States Constitution as set forth in this First Amended Complaint;

B)    to declare that Defendant Cali violated RICO as set forth in this First Amended Complaint;

C)    to declare that the license issued to Defendant HiCloud pursuant to the
        Michigan Regulation and Taxation of Marihuana Act (MRTMA), Mich. Comp.
        Laws § 333.27951, *et seq*., violates federal law (CSA and RICO) as set forth in
        this First Amended Complaint;

D)    to declare that Defendant Newfield's zoning laws and ordinances that permit
        Defendants HiCloud and Cali to operate a marijuana establishment/facility in
        the township in violation of the CSA and RICO as set forth in this First
        Amended Complaint violate federal law;

E)    to issue an injunction enjoining Defendant Hanna, in his official capacity,
        from issuing or reissuing any licenses pursuant to the Michigan Regulation
        and Taxation of Marihuana Act (MRTMA), Mich. Comp. Laws § 333.27951, *et
        seq*., that permit Defendant HiCloud and/or Defendant Cali to manufacture,
        process, develop, sell, and/or deal in marijuana in violation of federal law
        (CSA and RICO), as set forth in this First Amended Complaint;

F)    to issue an injunction enjoining Defendant Newfield from authorizing and
        permitting Defendant HiCloud and/or Defendant Cali to operate a marijuana
        establishment/facility in the township that is a nuisance and that violates
        federal law (CSA and RICO), as set forth in this First Amended Complaint;

G)    to issue an injunction enjoining Defendants Cali's and HiCloud's marijuana
        operation pursuant to the remedies provided by RICO, as set forth in this
        First Amended Complaint;

H)    to issue an injunction abating the nuisance caused by Defendant HiCloud, as
        set forth in this First Amended Complaint;

I)    to award Plaintiffs damages, including nominal damages, as set forth in this
        First Amended Complaint;

J)    to award Plaintiffs their reasonable attorneys' fees, costs, and expenses
        pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 1964, and other applicable law;

K)    to grant such other and further relief as this Court should find just and proper.

**ANSWER:**    **The allegations contained in sub-paragraphs A – K are denied as untrue.**

Respectfully submitted,

DATED:  April 14, 2025              PLUNKETT COONEY

BY:  */s/ Charles L. Bogren*
        Charles L. Bogren (P82824)
        Attorneys for Defendants Newfield Twp
        and Micklin,
        333 Bridge Street, N.W., Suite 530
        Grand Rapids, Michigan  49503
        **Direct Dial:  616-752-4606**
        **cbogren@plunkettcooney.com**

## AFFIRMATIVE DEFENSES

NOW COME Defendants, Newfield Township and Steven Micklin, by and through their attorneys, PLUNKETT COONEY, and raise the following Affirmative Defenses to the Plaintiffs' Amended Complaint:

1. The Amended Complaint fails to state a claim upon which relief can be granted.

2. The Defendants are entitled to dismissal of any state law claims on the basis of the Governmental Tort Liability Act, M.C.L. 691.1401, et. seq.

3. Defendant Micklin is entitled to dismissal on the basis of qualified immunity as to the federal constitutional claims asserted against him as a reasonable official in his position could have believed his actions were lawful in light of clearly established law.

4. This Court lacks subject matter jurisdiction over this case.

5. Plaintiffs' claims may be barred by the doctrine of *res judicata*.

6. Plaintiffs have failed to identify a protected property interest.

7. Plaintiffs have failed to plead and prove an absence of adequate state remedies.

8. The Court may need to abstain from exercising jurisdiction over this matter based on the *Pullman* and/or *Burford* Abstention Doctrines.

9. Plaintiffs may have failed to mitigate their damages.

10. Plaintiffs have failed to plead a viable claim under the RICO Statute as neither Newfield Township nor Defendant Micklin have a proprietary interest is Defendant HiCloud or control of Defendant HiCloud's operation.

11. The Plaintiffs' claims may be barred by expiration of the applicable the statute of limitations.

12. This Court cannot exercise jurisdiction over Plaintiffs' claims because Plaintiffs lack standing and/or the claims are unripe.

Respectfully submitted,

DATED:  April 14, 2025          PLUNKETT COONEY

BY:  */s/ Charles L. Bogren*
          Charles L. Bogren (P82824)
          Attorneys for Defendants Newfield Twp
          and Micklin
          333 Bridge Street, N.W., Suite 530
          Grand Rapids, Michigan  49503
          **Direct Dial:  616-752-4606**
          **cbogren@plunkettcooney.com**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

**JAMES DRAPER** and **CARRIE DRAPER**,

       Plaintiffs,

v.

**NEWFIELD TOWNSHIP**; **BRIAN HANNA**, in his
official capacity as the Executive Director of the
Cannabis Regulatory Agency of the Michigan
Department of Licensing and Regulatory Affairs;
**HICLOUD, LLC**; and **STEVEN MICKLIN**,
individually and in his official capacity as Zoning
Administrator for Newfield Township, Michigan,

       Defendants.

No. 1:24-cv-01305-PLM-PJG

Honorable Paul L. Maloney

---

**JURY DEMAND**

       Defendants Newfield Township and Steven Micklin hereby demands a trial by jury in

this matter.

       Respectfully submitted,

DATED:  April 14, 2025

PLUNKETT COONEY

BY:  */s/ Charles L. Bogren*
       Charles L. Bogren (P82824)
       Attorneys for Defendants Newfield Twp
       and Micklin
       333 Bridge Street, N.W., Suite 530
       Grand Rapids, Michigan  49503
       **Direct Dial:  616-752-4606**
       **cbogren@plunkettcooney.com**

60268894.1