UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DRAPER, *ET AL.*,                             )
                    Plaintiffs,                     )
                                                    )    No. 1:24-cv-1305
v.                                                  )
                                                    )
                                                    )    Honorable Paul L. Maloney
NEWFIELD TOWNSHIP, *ET AL.*,                        )
                    Defendants.                     )
_____         )

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

This matter comes before the Court on motions to dismiss from Defendant Brian Hanna, (ECF No. 20), and Defendants Endrit Cali and HiCloud, LLC ("HiCloud"), (ECF No. 27), and on Plaintiffs' motion for a preliminary injunction, (ECF No. 14). There are two primary areas of dispute in this case: first, Plaintiffs claim that a marijuana business operating next to their property is unlawful and harmful to them, and second, Plaintiffs claim local government officials unconstitutionally enforced local zoning laws against them. While small, incidental connections exist between these two areas, the relevant facts and legal theories are entirely distinct. The present motions arise from the first area. In this area, Plaintiffs bring claims under the federal civil RICO statute and state nuisance law. Plaintiffs are not entitled to either monetary or injunctive relief under the RICO statute. Without the RICO claims, there is no federal claim to which the state law nuisance claims are "so related" such that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court will decline to exercise supplemental jurisdiction over the nuisance claims. Thus, Defendants' motions

to dismiss will be granted. Having disposed of the RICO and nuisance claims, the Court necessarily finds that Plaintiffs have little chance of success on the claims underlying their motion for a preliminary injunction, so that motion will be denied.

## I.

Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true" to plausibly suggest that the party bringing the claim is entitled to the relief requested. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts "merely consistent with" a theory of liability suggest only possibility, not plausibility, and thus fail this test. *Id.* In assessing whether the pleading contains sufficient factual matter, courts need only accept factual allegations as true and not legal conclusions or unwarranted inferences. *Kottmayer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

Plaintiffs seeking a preliminary injunction must demonstrate that they are likely to succeed on the merits, they are likely to suffer irreparable harm absent the injunction, the balance of equities favors them, and the injunction is in the public interest. *Stryker Emp. Co. v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). These are factors, not elements, though a slim enough chance of success on the merits may be fatal on its own. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

## II.

Plaintiffs, James and Carrie Draper, live at a residence in Newfield Township, Michigan with their children. (ECF No. 8 at ¶ 15). About ten years after purchasing their

2

property, Defendant HiCloud began operating as a business in the marijuana industry, less than 1,000 feet from Plaintiffs' property. (*Id.* at ¶ 17). Defendant Cali owns and operates HiCloud. (*Id.* at ¶ 21). Defendant Cali personally participates in the conduct of HiCloud's affairs, which are ongoing and include growing marijuana plants and selling marijuana products. (*Id.*). HiCloud's operations produce a strong odor, detectable on Plaintiffs' property at least during the summer months. (*Id.* at ¶ 44). These odors interfere with Plaintiffs' intended uses of their property. (*See id.* at ¶¶ 44-46).

Defendant Hanna is the executive director of the Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs. (*Id.* at ¶ 11). This agency issued HiCloud a license under the Michigan Regulation and Taxation of Marihuana Act. (*Id.* at ¶ 18). Defendant Newfield Township approved a special use permit allowing HiCloud to expand its activities under local zoning ordinances in 2023. (*Id.* at ¶ 42).

Plaintiffs' third, fourth, and fifth claims for relief are relevant here. The third claim is that Defendant Cali violated the substantive provisions of the RICO statute and that Plaintiffs are entitled to monetary and equitable relief. (*Id.* at ¶¶ 105-16). The fourth claim is that Defendants HiCloud, Cali, and Newfield Township are liable to Plaintiffs under Michigan nuisance law. (*Id.* at ¶¶ 117-36). The fifth claim is for injunctive relief to prevent Defendants HiCloud and Cali from continuing HiCloud's operations and to prevent Defendant Hanna

and Defendant Newfield Township from continuing to license or permit HiCloud's operations. (*Id.* at ¶¶ 137-52).

## III.

### A. Plaintiffs Cannot Obtain Relief Against Defendants Hanna or Newfield Township Related to Their RICO Claims.

Plaintiffs only advance a RICO claim against Defendant Cali. (ECF No. 31 at PageID.480). However, Plaintiffs seek declaratory and injunctive relief against Defendants Hanna and Newfield Township related to Defendant Cali's alleged operations of Defendant HiCloud. It is not clear what legal basis the Court would have to grant such relief in absence of allegations that Defendants Hanna or Newfield Township had violated the substantive provisions of RICO. The civil RICO statute authorizes courts in some circumstances to issue injunctive relief. *See* 18 U.S.C. §§ 1964(a)-(b). Even under the assumption that private plaintiffs could obtain injunctive relief under the statute, injunctive relief would only be available to "prevent and restrain violations of section 1962 of this chapter." *Id.* § 1964(a).

Plaintiffs' clarification that they only assert a RICO claim against Defendant Cali suggests the RICO statute cannot be the source of relief against Defendants Hanna or Newfield Township. It could not be anyway, as Plaintiffs' allegations also do not support the conclusion that Hanna or Newfield Township violated the substantive RICO provisions. Plaintiffs have not alleged that these Defendants "received any income," *id.* § 1962(a), nor have Plaintiffs alleged their participation in a conspiracy, *id.* § 1962(d). That means that the Defendants could only have violated the substantive RICO provisions by acquiring or maintaining "any interest in or control of" HiCloud, *id.* § 1962(b), or by conducting or

participating in HiCloud's conduct, *id.* § 1962(c). The only alleged connection Defendant Hanna has to HiCloud is granting it a license, and the only alleged connection Defendant Newfield Township has to HiCloud is granting it a special use permit. These connections cannot constitute an interest or control for the purposes of § 1962(b), as those statutory terms refer solely to proprietary interests and control stemming from proprietary interests. *Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237, 1240-41 (E.D. Mich. 1995) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 181-82 (1993)). These connections also cannot establish a violation of § 1962(c), as that requires "proof that the defendant participated in the 'operation or management' of the enterprise." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *Reves*, 507 U.S. at 183). A license or a zoning permit fall far short of these requirements.

Since Plaintiffs have not alleged that Defendants Hanna or Newfield Township violated the substantive RICO provisions, injunctive relief is unavailable under § 1964(a), so the authority to grant the requested relief must come from somewhere else. Plaintiffs correctly observe that "[t]he Declaratory Judgment Act is not a cause of action," (ECF No. 8 ¶ 141), so the Declaratory Judgment Act does not help them. Plaintiffs argue that courts simply have equitable power to prevent injurious or unlawful activities by government officials. It is not that simple; courts can only exercise their equitable powers this way when "the plaintiff already has a cause of action from somewhere else." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014). Congress must specifically create a federal right or remedy for federal courts to issue that sort of declaratory or injunctive relief. *Holman v. Vilsack*, 582 F. Supp. 3d 568, 583-84 (W.D. Tenn. 2022) (citing *Safe Sts. All. v.*

*Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017)). Plaintiffs' reliance on *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), is misplaced. In that case, the Supreme Court held that "the Supremacy Clause does not confer a right of action" and explained that "once a case or controversy properly comes before a court," then courts may grant injunctive relief "in a proper case." *Id.* at 326-27. The rule is that plaintiffs must have a cause of action already to request injunctive relief under a court's equitable power; equity is not a cause of action in itself. The doctrine from *Ex parte Young*, 209 U.S. 123 (1908), does not change this conclusion, as it "does not supply a right of action by itself." *Mich. Corr. Org.*, 774 F.3d at 906; *see Armstrong*, 575 U.S. at 326. It is a shield against enforcing unlawful action, not a sword allowing attacks on actions a plaintiff has no other right to challenge otherwise. *Mich. Corr. Org.*, 774 F.3d at 906.

The final place from which Plaintiffs argue the Court gains authority to grant them injunctive relief against Defendants Hanna and Newfield Township is their state law nuisance claims. This raises the question of whether the Court will, or even can, exercise jurisdiction over Plaintiffs' nuisance claims. The Court has supplemental jurisdiction over a state law claim when it is "so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Courts "may decline to exercise supplemental jurisdiction" if the state law claims raise "novel or complex" issues of state law or if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c). The Court must now, then, consider whether *any* of Plaintiffs' RICO claims will

stay in the case and form the basis for exercising supplemental jurisdiction over the state law nuisance claims.

**B.** **Plaintiffs' RICO Claim Against Defendant Cali Fails Because Plaintiffs Are Not Within the Class of People the Controlled Substances Act Was Meant to Protect and the Civil RICO Statute Does Not Permit Private Plaintiffs to Obtain Injunctive Relief.**

While Plaintiffs fail to allege that other Defendants had violated the substantive provisions of RICO, they adequately allege that Defendant Cali has. "To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga*, 694 F.3d at 791 (quoting *Moon*, 465 F.3d at 723). Defendant Cali does not dispute the conduct or racketeering activity elements, and Plaintiffs' allegations regarding his activities with HiCloud's marijuana business plainly meet those elements. Defendant Cali does dispute the enterprise and pattern elements, but Plaintiffs have pled sufficient allegations for those elements as well.

Defendant Cali at least nominally disputes the enterprise element, but his argument seems only to be that this element cannot be met as to HiCloud itself. Any RICO claim against HiCloud would fail because of the requirement that the person sued be distinct from the alleged enterprise, but that does not similarly shield Cali as an employee. *See In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir.

2013). Because Cali is a separate person from the enterprise of HiCloud, the enterprise element is satisfied as to a RICO claim against Cali.

Cali disputes the pattern element but misreads the Sixth Circuit case on which his argument rests. His argument hinges on a line from the opinion in *Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020): "If the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met." (citing *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 456-67 (6th Cir. 2019)). Without additional context, this appears to favor Cali, as he had a single scheme with the singular goal of operating HiCloud. But read in context, the "single scheme" language is not relevant here. Earlier in the opinion, the court recited the general rule for the pattern element: "To prove a pattern of racketeering, a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. For continuity to exist, there must be a threat of future criminal conduct." *Courser*, 969 F.3d at 621 (citation modified) (citation omitted). Only then does the court say that a "single scheme" with a "single goal" would not fit within this rule, which requires the threat of future criminal conduct. *Id.* The *reason* is that if a singular scheme's singular goal "was accomplished, no threat of alleged future criminal activity" would remain. *Id.* In *Courser*, the defendants allegedly had a "single purpose and victim" and the "alleged scheme was complete" once the victim resigned from his position, so "nothing else remained to be done." *Id.* The case the Sixth Circuit cited for the "single scheme" line further buttresses the conclusion that Cali's reading is inaccurate. In *Aces High*, the court explained that a "threat of continuity may also be established 'by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" 768

F. App'x at 456 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). While schemes with definitive, achievable goals conclusively end upon the attainment of those goals, an ongoing business does not so conclusively end. Plaintiffs adequately allege that operating HiCloud necessarily requires continuing to engage in the illegal predicate activity of growing and selling marijuana. This is enough to satisfy the pattern element as defined in *Courser* and *Aces High*.

Of course, satisfying these elements only demonstrates that Cali allegedly violated the substantive provisions in § 1962. Other questions arise for Plaintiffs to access the civil remedies in § 1964. Resolving these questions requires the Court to decide two issues on which neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has provided definitive guidance. The first is whether the civil RICO statute incorporates common law zone of interest principles. The second is whether injunctive relief is available to a private plaintiff under the civil RICO statute.

1. **Section 1964(c) incorporates common law zone of interest principles for the same reason it incorporates common law proximate cause principles, and Plaintiffs' alleged harms are not within the zone of protected interests.**

Section 1964(c) creates a remedy for plaintiffs injured in their "business or property by reason of a violation of" § 1962. The "by reason of" language, by its plain meaning, would seem to require nothing more than but-for causation, yet the Supreme Court held that it requires more. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-69 (1992). The language requires proximate causation as well because in drafting RICO, Congress borrowed the language in § 1964 from the Clayton Act, which borrowed the relevant language from the

Sherman Act, and courts had long interpreted the Sherman Act's language to "incorporate common-law principles of proximate causation." *Id.* at 267. Congress's use of the language carried with it "the intention to adopt 'the judicial gloss that avoided a simple literal interpretation.'" *Id.* at 268 (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 534 (1983)).

The "by reason of" language thus carries with it more than its plain meaning alone would indicate. The parties here dispute how much more. Plaintiffs argue that it requires proximate cause, as the Supreme Court held in *Holmes*, but nothing more. Defendants argue that the language incorporates other common law principles, including the principle that statutes only allow tort recovery for those in the zone of interests protected by the statute.

Many sources of persuasive authority support Defendants' position. In *Holmes*, Justice Scalia wrote a concurring opinion in which he explained that "[j]udicial inference of a zone-of-interests requirement, like judicial inference of a proximate-cause requirement, is a background practice against which Congress legislates." 503 U.S. at 287 (Scalia, J., concurring). This would require courts to determine whether "the plaintiff is within the class of persons sought to be benefited by the provision at issue," which in the RICO context would not be uniform, but instead "vary according to the nature of the criminal offenses upon which those causes of action are based." *Id.* at 287-88. The Seventh Circuit cited Justice Scalia's concurrence in deciding that "*Holmes* has adopted common-law approaches to decide when RICO authorizes recovery for derivative injuries," and determined that RICO incorporated the principle that plaintiffs "claiming injury by the defendant's violation of a statute must show not only that the defendant violated the law but also that the plaintiff is

among the persons protected by the law." *Isr. Travel Advisory Serv., Inc. v. Isr. Identity Tours*, 61 F.3d 1250, 1258 (7th Cir. 1995) (Easterbrook, J.); *see also Carter v. United States*, 333 F.3d 791, 797 (7th Cir. 2003) (Posner, J.) ("An injury resulting from the violation of a statute . . . is actionable under tort law only if the statute was intended to avert the kind of injury that occurred."). The Second and Eighth Circuits have also integrated the zone of interests test into their evaluations of RICO claims. *See, e.g., Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 953 (8th Cir. 1999). District courts outside these circuits have done so as well, including one in the Sixth Circuit. *See, e.g., Ky. Laborers Dist. Council Health & Welfare T. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 768 (W.D. Ky. 1998) ("As a preliminary matter, the Court must consider whether the Funds fall within RICO's protected 'zone-of-interests.'"); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 (D.D.C. 2000) ("[P]roximate causation demands that the plaintiff be the 'intended target of the RICO violation.'" (quoting *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400)).

These sources are in line with the Supreme Court's reasoning in RICO cases. The Court in *Holmes* read proximate cause into the statute on the principle that Congress intended to incorporate the common law principles courts had imputed to the same words previously. 503 U.S. at 268. The Court later interpreted the "by reason of" language to incorporate the common law of civil conspiracy when the predicate violations are of § 1962(d), using largely the same reasoning as in *Holmes. See Beck v. Prupis*, 529 U.S. 494, 500-01 (2000). The Court has explained the holding in *Beck* as incorporating common law principles into "what it means to be injured by" predicate acts in § 1962. *Bridge v. Phoenix*

*Bond & Indem. Co.*, 553 U.S. 639, 653 (2008). Even when the Court has rejected arguments regarding interpretation of RICO rooted in common law principles, it has rejected them not for being irrelevant, but for failing to accurately reflect the common law. *See id.* ("[E]ven the common-law understanding of injury caused by fraud does not support petitioners' argument."); *Yegiazin v. Smagin*, 599 U.S. 533, 547 (2023) ("[I]t is far from clear that petitioners' gloss on the principle of *mobilia sequuntur personam* was as well established or as wide sweeping as petitioners take it to be . . . ."). The common law principle relevant here was well established as of at least the 1870s, *see Carter*, 333 F.3d at 797, and it stands to reason that it would structure what Congress understood injuries caused by violation of a statute to encompass.

Plaintiffs argue that "[a]ll that RICO requires . . . is proximate cause." (ECF No. 33 at PageID.546). Plaintiffs cite two authorities for this conclusion: the Supreme Court's decision in *Holmes* and the Tenth Circuit's in *Safe Streets*. Proximate cause is certainly all that was required by the holding in *Holmes*, but it does not follow that all other common law principles were excluded. The Court's reasoning was broad enough to include other settled common law principles prevalent in the same time frame, though the Court had no need to address the zone of interests question to resolve *Holmes*. The Tenth Circuit's decision in *Safe Streets* conflicts with the idea of integrating a zone of interests analysis in RICO cases only obliquely, if at all. In *Safe Streets*, the Tenth Circuit wrote that "a plaintiff is not required to plead that he is a victim of the defendant's underlying crime . . . to establish a direct injury." 859 F.3d at 890 (citing *Bridge*, 553 U.S. at 649-50). This proposition does not conflict with a zone of interest rule, as the zone of interests protected by a statute can expand beyond the

12

immediate victim of any given violation of that statute. The zone of interests analysis assesses whether the plaintiff is in the "class of persons" the statute was meant to protect, and whether they were subject to the "class of risks" the statute was meant to abate. *Baisch*, 346 F.3d at 375. That is distinct from analyzing whether a given plaintiff was the intended victim of the specific criminal act of the defendant. Even if the line from the *Safe Streets* opinion were relevant, it is based on a misreading of *Bridge*. The holding in *Bridge* was that a plaintiff bringing a civil RICO claim based on predicate acts of mail fraud need not prove they relied on the fraudulent misrepresentations because reliance is not an element of the statutorily defined crime of mail fraud. *See* 553 U.S. 648-50. *Bridge* only clarified that the mail fraud statute did not carry with it the common law definition of fraud. If anything, it clarified that the class of potential victims of statutory mail fraud was broader than the class of potential victims of common law fraud. *Bridge* thus provided no support to the proposition for which the Tenth Circuit cited it, and that proposition would not conflict with a zone of interests rule anyway.

The Court is persuaded that the RICO statute incorporated common law zone of interest principles, and so follows the Second, Seventh, and Eighth Circuits in incorporating a zone of interest analysis. Defendants argue that this means Plaintiffs must allege they were the intended targets of the predicate acts; while some of the cases use this language, that is a different question from whether a plaintiff falls in the zone of interests protected by the statute. The correct question is whether the plaintiff was in the class of persons protected by the statute and suffered the kind of risk at which the statute was targeted. *See Baisch*, 346 F.3d at 375. However the question is phrased, Plaintiffs do not argue that the answer could

ever be in their favor; they only argue that the question should not be asked. (*See* ECF No. 33 at PageID.545-46). The Court finds, though, that Plaintiffs were well outside the zone of interests protected by the relevant statute, the Controlled Substances Act (CSA).[1]

The CSA was not meant to protect the interests of property owners near marijuana grow operations, nor was it meant to abate risks posed by the smells of marijuana plants. "The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Gonzales v. Raich*, 545 U.S. 1, 12 (2005). The CSA was concerned with drug use, abuse, and distribution; it was not concerned with the effects of marijuana plant growth but with the effects of marijuana use and distribution. The CSA's framework illustrates the lack of concern with marijuana plant growth as a general matter. The CSA allowed use of marijuana in research studies and delegated authority to the Attorney General to change its designation and allow its growth and use for other purposes. *Id.* at 14-15. The provisions and aims of the CSA do not evince any concern with adjacent property owners or effects on property values surrounding grow operations. Subsequent restrictions on federal enforcement of the CSA when it would conflict with state policies permitting marijuana growth and use for certain purposes confirm this. *See Standing*

---

[1] Violations of the Controlled Substances Act are incorporated as "racketeering activity" as defined by § 1961: "**(D)** any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

*Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (statement of Thomas, J., on denial of certiorari).

Because Plaintiffs have not alleged that they were in the class of people protected by the CSA and were not subject to a risk the CSA was meant to abate, they fail to state a claim under § 1964(c). Despite alleging sufficient facts to suggest that Defendant Cali violated the substantive provisions of § 1962, Plaintiffs fail to meet the additional requirements for relief in § 1964(c). Defendants' motion to dismiss, to the extent it seeks dismissal of this claim, will be granted. The Court now turns to the question of whether Plaintiffs may seek other forms of relief under other subsections of § 1964.

### 2.   Section 1964 does not allow private plaintiffs to obtain injunctive relief.

The Circuit Courts of Appeals are split on whether private plaintiffs may seek injunctive relief under the civil RICO statute. The Fourth, Fifth, and Ninth Circuits say no. *See Hengle v. Treppa*, 19 F.4th 324, 353-56 (4th Cir. 2021); *In re Fredeman Litig.*, 843 F.2d 821, 828-30 (5th Cir. 1988); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1081-89 (9th Cir. 1986). The Second and Seventh Circuits say yes. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 137-40 (2d Cir. 2016); *Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687, 695-700 (7th Cir. 2001), *rev'd on other grounds*, *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). This issue has split District Courts in this circuit as well: the Eastern District of Michigan said no, *Soc'y of St. Vincent De Paul in the Archdiocese of Detroit v. Am. Textile Recycling Servs.*, No. 13–CV–14004, 2014 WL 65230, at *4 n.1 (E.D. Mich. Jan. 8, 2014), while the Southern District of Ohio said yes, *Smith v. FirstEnergy Corp.*, 518 F. Supp. 3d 1118, 1126 (S.D. Ohio 2021). Other courts, including the Sixth Circuit, have

expressed doubts that private plaintiffs can seek injunctive relief, but have not decided the question. *See, e.g., Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 221 F.3d 924, 927 n.2 (6th Cir. 2000); *Ganey v. Raffone*, 91 F.3d 143, *4 n.6 (6th Cir. 1996) (unpublished table decision); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 848 (1st Cir. 1990).

Of course, the actual question here is one of statutory interpretation. The Court thus, as always, begins with the text. *Ohio Telecom Ass'n v. FCC*, 150 F.4th 694, 708 (6th Cir. 2025). Section 1964 reads, in relevant part:

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.
> (b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.
> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(a)-(c). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be

done in a particular mode, it includes the negative of any other mode.'" *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979) (quoting *Botany Mills v. United States*, 278 U.S. 282, 289 (1929)). Since "no statute pursues any single purpose at all costs," courts must be careful to provide only the remedies Congress intended when navigating the reality that "new rights for some mean new duties for others." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368-69 (2025) (citation modified).

Section 1964(a) unambiguously authorizes courts to grant injunctive relief, among other things. But it is silent as to who may request that relief. Section 1964(b) speaks to that when it specifies that the Attorney General "may institute proceedings under this section." While those proceedings brought by the Attorney General are pending, § 1964(b) also authorizes courts to grant interim relief such as "restraining orders or prohibitions."

Section 1964(c), the only section explicitly referencing suits by private plaintiffs, does not have language analogous to the "may institute proceedings under this section" portion of § 1964(b). Instead, it authorizes private plaintiffs who suffered certain kinds of injury to "sue therefor" and "recover . . . damages." § 1964(c). The term "therefor" means "[f]or that thing: for it, or them." *Therefor*, Black's Law Dictionary (4th ed. 1968). Section 1964(c) thus only explicitly authorizes suits to recover damages related to injuries already sustained. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 600-01 (2025) (discussing the meaning of "injured in business or property" in § 1964(c)). Section 1964(c) makes no mention of injunctive relief and contains no cross-reference to other portions of the statute which mention injunctive relief. This difference between § 1964(b) and (c) matters and evinces Congress's intent to

empower the Attorney General to the full extent allowed in § 1964(a) but limit suits by private plaintiffs to the remedy specified in § 1964(c).

This reasoning largely tracks with the Fourth Circuit's in *Hengle*: "Congress's use of significantly different language to create the governmental right of action in Section 1964(b) and the private right of action in Section 1964(c) compels us to conclude by negative implication that, although the government may sue for prospective relief, private plaintiffs may sue only for treble damages and costs." 19 F.4th at 354. This does not "reduce [§ 1964(a)] to a merely jurisdictional provision" but instead "honors the distinct text Congress used" in "describing courts' remedial powers under RICO in (a) and creating two different causes of action with corresponding remedies for two different categories of plaintiffs in (b) and (c)." *Id.* at 355.

The Second and Seventh Circuits' contrary conclusions rest on the flawed assumption that § 1964(b) does not authorize the Attorney General to pursue the remedies listed in § 1964(a). *See Donziger*, 833 F.3d at 139; *Scheidler*, 267 F.3d at 697. Were that the case, reading the statute to limit parties only to the relief specified in §§ 1964(b) and (c) would leave § 1964(a) without much purpose. But the "may institute proceedings under this section" language of § 1964(b) is a "clear cross-reference" to § 1964(a), *Hengle*, 19 F.4th at 354, in a way that the "sue therefor" language of § 1964(c) is not. While the Seventh Circuit understood the structure of the statute as setting forth the kinds of relief generally available in § 1964(a), then specifying additional remedies available to particular kinds of plaintiffs in §§ 1964(b) and (c), *Scheidler*, 267 F.3d at 696, the text is more consistent with the Fourth

Circuit's understanding of it as describing remedial powers in § 1964(a) and creating distinct causes of action in §§ 1964(b) and (c), *Hengle*, 19 F.4th at 355.

The Second and Seventh Circuits also cite the RICO statute's provision directing that it be liberally construed in support of their conclusions. *See Donziger*, 833 F.3d at 139; *Scheidler*, 267 F.3d at 698. Courts, though, may only grant the remedies established by the text of the legislation, and are not free to grant whatever remedies they deem necessary to advance a statute's purpose. *Medina*, 606 U.S. at 368. "Congress may not wish to pursue a provision's purpose to the extent of authorizing private suits." *Id.* at 368-69 (citation modified). Since the statute's text leads to the conclusion that injunctive relief is not available to private plaintiffs, the Court may not grant it and thereby reweigh the factors Congress considered in crafting the statute. *See id.* at 369.

Plaintiffs rely on the Seventh Circuit's decision in *Scheidler* and criticize the Ninth Circuit's reasoning in *Wollersheim*. (*See* ECF No. 31 at PageID.483-84). The court in *Wollersheim* rested its conclusions, at least partially, on legislative history. *See* 796 F.2d at 1084 ("The legislative history mandates us to hold that injunctive relief is not available to a private party in a civil RICO action."). While that history does support the reading of the statute the Court adopts, it is not necessary, as the text itself sufficiently supports the Court's conclusion. *See Hengle*, 19 F.4th at 356 (discussing *Wollersheim*). The Court's points of departure with the Seventh Circuit have already been explained, though one more remains. The Seventh Circuit concluded that because the remedial provisions of RICO and the Clayton Act are treated identically that § 1964 must authorize injunctive relief for private plaintiffs. *Scheidler*, 267 F.3d at 700. The differences between the statutes were not material

in the cases the Seventh Circuit cited, but they are material here. Where the Clayton Act has a separate provision explicitly authorizing private parties to sue for injunctive relief, RICO lacks one. *See Hengle*, 19 F.4th at 355-56. The comparison with the Clayton Act thus undermines, rather than supports, the argument that § 1964 authorizes injunctive relief for private plaintiffs.

Thus, under RICO, Plaintiffs are not authorized to receive injunctive relief at all. They have not demonstrated that they may recover damages from any of the Defendants either. These are sufficient grounds to dismiss the RICO claims against the moving Defendants. The Court now turns to the effect this has on the state law nuisance claims and the Plaintiffs' motion for a preliminary injunction.

## C. The Court Will Not Exercise Subject Matter Jurisdiction Over Plaintiffs' State Law Nuisance Claims.

The Court has supplemental jurisdiction over a state law claim when it is "so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Courts "may decline to exercise supplemental jurisdiction" if the state law claims raise "novel or complex" issues of state law or if the court "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c), and courts "should not ordinarily reach [a] plaintiff's state-law claims" once the associated federal claims are dismissed, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Jurisdiction should only be retained in those circumstances when "the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Id.* (citation modified). This is not a case where retaining

jurisdiction over the state law claims is warranted. With the RICO claims dismissed, the only remaining federal claims are related to allegedly unconstitutional enforcement of zoning law by Defendants Micklin and Newfield Township. Those claims raise none of the same factual or legal questions as the nuisance claim. The resolution of one does not depend on resolution of the other. Further, the state law issues are novel and complex. They are novel because caselaw applied to marijuana operations is limited and very recent. They are complex because resolution of the nuisance claim requires inquiries into state and local zoning law and application of rules which turn on what uses of property are reasonable in specific contexts. *See Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 723 (Mich. 1992). Developing the law here is best left to the courts of the State of Michigan. Because the Court is not left with federal claims with which the nuisance claims form the same case or controversy, and the nuisance claims raise novel and complex issues of state law, the Court will not exercise supplemental jurisdiction over the nuisance claims. They will thus be dismissed. Because the Court is dismissing the nuisance claims, no authority is left for Plaintiffs to pursue injunctive relief against the moving Defendants. The Court now turns to resolution of the Plaintiffs' motion for a preliminary injunction.

### D. Plaintiffs' Motion for a Preliminary Injunction Will Be Denied Because the Court Lacks Authority to Grant Injunctive Relief and Because Plaintiffs Have a Minimal Chance of Success on the Merits.

Plaintiffs may not seek injunctive relief under RICO. The Court is not exercising supplemental jurisdiction over Plaintiffs' nuisance claims. No authority exists under which the Court *could* grant the preliminary injunction Plaintiffs seek. *See Holman*, 582 F. Supp.

3d at 583-84. But Plaintiffs have also failed to establish a substantial likelihood of success on the merits. Indeed, having resolved the merits of the RICO claim against Plaintiffs, the chances are as minimal as they can be. That would independently be reason enough to deny Plaintiffs' motion. *Gonzales*, 225 F.3d at 625. The Court, though, need not go through each of the factors, as the Court simply could not grant the injunction even if the other factors strongly favored Plaintiffs.

**IV.**

RICO's use by private plaintiffs is limited by common law considerations Congress integrated into the statute and by explicit limitations written into the remedial provisions. Both of those limitations are applicable to Plaintiffs' claims in this case and deprive the Court of authority to grant the injunctive relief Plaintiffs seek. The Plaintiffs' state law nuisance claim is theoretically a source of authority under which a court could grant an injunction, but the question of whether to do so is best left to the courts of the State of Michigan. The moving Defendants' motions to dismiss (ECF Nos. 20, 27) are thus **GRANTED**. Plaintiffs' motion for a preliminary injunction (ECF No. 14) is **DENIED**. Plaintiffs' third and fifth claims for relief are **DISMISSED**. Plaintiffs' fourth claim for relief is **DISMISSED FOR LACK OF JURISDICTION**. Defendants Hanna, HiCloud, and Cali are **DISMISSED**.

**IT IS SO ORDERED.**

Date:  December 9, 2025                        /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge